**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
UNIVERSITAS EDUCATION, LLC,

                Judgment Creditor,          :

              -against-              :

NOVA GROUP, INC., as trustee, sponsor and    :
fiduciary of THE CHARTER OAK TRUST
WELFARE BENEFIT PLAN,            :

                Judgment Debtor,

           -and-

Daniel E. Carpenter, Charter Oak Trust Welfare
Benefit Plan, Grist Mill Capital, LLC, Grist Mill
Holdings, LLC, the Grist Mill Trust Welfare
Benefit Plan, Avon Capital, LLC, Hanover Trust
Company, Carpenter Financial Group and Phoenix
Capital Management, LLC,

                Respondents.
-----------------------------------------------------------------X

Case Nos. 11 CV 1590-LTS-HBP and
11-8726-LTS

## DECLARATION OF MICHAEL BARNETT
## IN SUPPORT OF UNIVERSITAS EDUCATION, LLC'S MOTION FOR
## <u>A PRELIMINARY INJUNCTION, PERMANENT INJUNCTION AND TURNOVER</u>

     **MICHAEL BARNETT**, an attorney admitted to practice law in this Court, declares the

following under penalty of perjury pursuant to 28 U.S.C. §1746:

     1.      I am an associate at Loeb & Loeb LLP, attorneys for Universitas Education, LLC

("Universitas"), the Petitioner/Judgment Creditor in the above-captioned proceeding.

### <u>INTRODUCTION</u>

     2.      I respectfully make this declaration pursuant to Local Rule 6.1(d) and in support

of Universitas' motion, brought by Order to Show Cause, pursuant to Fed. R. Civ. P. 65(a), Fed.

R. Civ. P. 69, N.Y. C.P.L.R § 5225(b) and the Court's Individual Practice Rule A(4)(b), for a preliminary and then permanent injunction, and turnover of certain monies and assets.

3.      This motion is brought against Daniel E. Carpenter, an officer, shareholder and/or manager of Judgment Debtor Nova Group, Inc. ("Nova"), and the following entities – Nova, the Charter Oak Trust Welfare Benefit Plan (the "Charter Oak Trust" and "Charter Oak Trust 2009"), Grist Mill Capital, LLC ("Grist Mill Capital"), Grist Mill Holdings, LLC ("Grist Mill Holdings"), the Grist Mill Trust Welfare Benefit Plan ("Grist Mill Trust"), Avon Capital, LLC ("Avon Capital"), Hanover Trust Company ("Hanover"), Carpenter Financial Group ("Carpenter Financial"), Phoenix Capital Management, LLC ("Phoenix"), and subsequent transferees and entities affiliated with Mr. Carpenter but unknown to Universitas at this time (collectively the "Respondents").

4.      Universitas is proceeding by Order to Show Cause against Mr. Carpenter, against whom it seeks a preliminary injunction, a permanent injunction and turnover Order.

5.      Universitas is proceeding by Notice of Motion against the remaining Respondents, against which it seeks permanent (but not preliminary) injunctions and turnover Orders.

6.      By this motion, Universitas requests an Order directing the Respondents to each turn over (and/or transfer, assign, or arrange to be transferred or assigned) to Universitas money and/or assets that were improperly transferred to them; these monies and/or assets originated with, or belong to, Nova and/or the Charter Oak Trust.

7.      Universitas requests that the Court make the turnover order applicable to all subsequent transferees of the Respondents that are controlled, directly or indirectly, by Mr. Carpenter. For the reasons set forth below and in Universitas' accompanying memorandum of

law, Universitas requests that the Respondents be ordered to turn over monies or other assets in the following amounts[1]:

- Grist Mill Capital – $31,263,842.75

- Daniel E. Carpenter – $26,776,834.94[2]

- Grist Mill Holdings – $21,000,000.00

- Carpenter Financial – $11,140,000.00

- Avon Capital – $6,710,065.92

- Phoenix – $5,000,000.00

- Grist Mill Trust – $4,487,007.81

- Hanover – $1,200,000.00

8.    Universitas also seeks a preliminary injunction against Mr. Carpenter, enjoining him from, directly or indirectly, causing, making, permitting or suffering any sale, assignment or transfer of, or any interference with, any asset or property of his, and any asset or property of any company, corporation or entity (including any trusts) in which he has a direct or indirect interest or control; provided that Mr. Carpenter be permitted to expend and/or transfer up to $20,000.00 per month for ordinary expenses of his or one of his entities, with any such payments or transfers to be reported, in writing, to Universitas' counsel within seven (7) days of such payment/transfer being made.

---

[1] The total amount actually turned over would of course be limited to the amount of Universitas' judgment.

[2] The amount sought from Mr. Carpenter is the total amount siphoned from Nova as Trustee of the Charter Oak Trust ($31,263,842.75), less the amount of this money that was improperly transferred to the Grist Mill Trust ($4,487,007.81).  Universitas does not at this time claim that the Grist Mill Trust is an alter ego of Mr. Carpenter, although the transfers of Charter Oak Trust funds to Grist Mill Trust were improper and should result in a turnover Order against the Grist Mill Trust in the amount of $4,487,007.81.

9.     Additionally, Universitas seeks a permanent injunction prohibiting further transfers of assets of the Respondents – including any asset or property of Mr. Carpenter's, and any asset or property of any company, corporation or entity (including any trusts) in which he has a direct or indirect interest or control – until Universitas' judgment is satisfied in full.  These assets include the following life insurance policies owned or held by the Charter Oak Trust (identified by insured last name, insurance carrier and policy number):

- Collins – PHL Variable Insurance Policy No. 975 279 51

- Paulsrud – PHL Variable Insurance Policy No. 975 294 11

- Robertson – PHL Variable Insurance Policy No. 975 295 60

- Zahner – PHL Variable Insurance Policy No. 975 293 42

- Bolton – Lincoln Life Policy No. JJ7121879

- Clinard – Lincoln Life Policy No. JJ7105688

- Lowry – Lincoln Life Policy No. JJ7130995

- Nordin – Lincoln Life Policy No. JJ7075457

10.     The Charter Oak Trust owns (or once owned) policies insuring the lives of several hundred individuals.  These policies are assets of the Charter Oak Trust that can be used to satisfy Universitas' judgment against Nova.  Universitas therefore also seeks an Order directing the retitling of any insurance policies that were previously held by the Charter Oak Trust but improperly transferred to another entity controlled by Mr. Carpenter.  One such policy is a policy issued by Sun Life Financial insuring the life of a woman with the last name Amsterdam (Policy Number 020158601).

11.     Finally, as discussed below, there are four (4) Charter Oak Trust policies that were issued by PHL Variable Insurance Company ("PHL") and are the subject of litigation

between the Charter Oak Trust and PHL.  Universitas seeks an Order directing that Universitas directly receive any monies or assets that PHL (or any of its affiliates) may pay to the Charter Oak Trust, or that the Charter Oak Trust or any of its affiliates receive, in respect of these 4 policies.

## UNIVERSITAS FACES THE RISK OF IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION AGAINST MR. CARPENTER

12.     Universitas has not previously moved for a preliminary injunction against Mr. Carpenter with respect to the subject matter of this motion for turnover.  On March 4, 2013, Universitas moved for, and the Court granted on consent, a preliminary injunction against Mr. Carpenter, his wife Molly Carpenter and Moonstone Partners, LLC (a company the Carpenters control), with respect to insurance monies payable for property damage to a Rhode Island oceanfront home that Universitas believes was improperly purchased with misappropriated Nova/Charter Oak Trust funds.  See Dkt. No. 219.[3]

13.     Universitas' request for an Order to Show Cause against Mr. Carpenter – as opposed to its proceeding by Notice of Motion, which it is doing for the remaining Respondents – is attributable to Mr. Carpenter's attempting to transfer assets out of the rightful possession of Nova/Charter Oak Trust following the entry of judgment and service of Restraining Notices. Additionally, as discussed below, Mr. Carpenter faces the risk of a reinstatement of a prior, vacated conviction on fraud charges, as well as a grand jury indictment in the District of Connecticut.  Either of these events could cause Mr. Carpenter to further transfer, expend or conceal money that should be used to satisfy Universitas' judgment.  Also, since Mr. Carpenter

---

[3] Unless otherwise stated, all references to docket entries are for those in Case No. 11-1590-LTS-HBP.

has a demonstrable tendency to commingle the assets of his various entities, there is also the possibility that if his overturned conviction in the District of Massachusetts is reinstated, money that should be used to satisfy Universitas' judgment could be seized by the Government for penal or restitutionary purposes. In sum, the potential imminence of Mr. Carpenter's being indicted or of going to prison increases the urgency of this motion. Just last week, Nova's counsel, responding to the Court's Order that Nova deposit the judgment amount into the Court no later than October 4, claimed that neither Nova nor the Charter Oak Trust had the assets necessary to comply with the Order; and that the Carpenter-controlled entities to which Mr. Carpenter transferred Universitas' money in 2009 no longer have the money. See **Exhibit 53** ("Such cash and assets are no longer under the control of the judgment debtor or of the transferee entities"). These disclosures reinforce Mr. Carpenter's liability as an alter ego of the transferee entities and the necessity of a preliminary injunction enjoining the transfer of all assets controlled directly or indirectly by Mr. Carpenter, through a shell entity or otherwise.

14.     Nova, the Charter Oak Trust and Grist Mill Capital are already subject to Restraining Notices that should prevent them and their principals from transferring assets that could be used to satisfy Universitas' judgment. Yet representatives of these companies – upon information and belief, at Mr. Carpenter's direction – have contacted insurance companies and other parties in an attempt to designate Grist Mill Capital (a company Mr. Carpenter controls) as the owner of certain policies that are owned by the Charter Oak Trust. This is a blatant violation of the Restraining Notices that Universitas issued, and an attempt to frustrate Universitas' collection of its judgment.

15.     Attached as **Exhibit 1** is a true and complete copy of a Restraining Notice, dated June 22, 2012, that was served on Nova and the Charter Oak Trust, as well as an Affidavit of Service for this Restraining Notice.

16.     Attached as **Exhibit 2** is a true and complete copy of a Restraining Notice, dated June 22, 2012, that was served on Grist Mill Capital, as well as an Affidavit of Service for this Restraining Notice.

17.     On March 29, 2013, several weeks after this Court issued an Order to Show Cause on Universitas' turnover motion brought in relation to the Carpenters' Rhode Island vacation home (dkt. no. 219), a Nova representative wrote to Sun Life Financial seeking to change the owner and beneficiary of a Sun Life policy (insuring the life of Ms. Amsterdam), from the Charter Oak Trust to Mr. Carpenter's Grist Mill Capital.  Attached as **Exhibit 3** is a true and complete copy of the March 29, 2013 letter from Ms. Murphy to Sun Life Financial.

18.     On May 16, 2013, a week after the Court held its hearing on Universitas' turnover motion related to the Rhode Island home, Wayne H. Bursey, who is related by marriage to Mr. Carpenter[4], wrote to Lincoln National Life Insurance Company ("Lincoln Life") seeking to change the owner and beneficiaries of four Lincoln Life policies, from the Charter Oak Trust to Grist Mill Capital.  Attached as **Exhibit 4** is a true and complete copy of the correspondence between Mr. Bursey and Lincoln Life that Universitas has received.[5]  Based on the July 30, 2013

---

[4] Mr. Bursey is married to the sister of Molly Carpenter, Daniel Carpenter's wife.

[5] Mr. Bursey's correspondence shows that he continues to operate Nova and the Charter Oak Trust, even though Nova's counsel said back in August 2012 that Mr. Bursey had resigned (see **Exhibit 5** attached – a true and complete copy of an August 30, 2012 letter from Joseph M. Pastore, III to me); and Mr. Bursey has asserted his Fifth Amendment right against self-incrimination with regard to all matters pertaining to Nova, the Charter Oak Trust, Grist Mill Capital and the Grist Mill Trust (see **Exhibit 6** attached – a true and correct copy of a May 8, 2013 letter from Mr. Bursey's attorney, Stephen V. Manning, to the Court).

letter from Lincoln Life to Mr. Bursey (see **Exhibit 4**), we believe that Mr. Bursey was unsuccessful in his attempt to effect a transfer of the policies to Grist Mill Capital.

19.     Without an injunction, Mr. Carpenter, having already arranged for the transfer of more than $30 million out of the rightful possession of Nova and the Charter Oak Trust, will continue to direct the efforts of individuals such as Mr. Bursey and Ms. Murphy to transfer the ownership of insurance policies to Grist Mill Capital.  Unless a preliminary injunction issues, Mr. Carpenter will continue to transfer Universitas' money among the dozens if not several hundred entities that he has created, having already, as documented in these papers, transferred Universitas' money across a half-dozen entities in the year 2009 alone.  Mr. Carpenter is also likely spending or otherwise using money that could be used to satisfy Universitas' judgment. Universitas faces irreparable harm because each diminishment of the assets controlled by Mr. Carpenter (whether in his name or the name of one of his many entities) increases the likelihood that Universitas will not be able to collect on its judgment.

20.     Pursuant to the Court's Individual Practice Rule A(4)(b), requiring that "the applicant [for a preliminary injunction] provide a copy of the proposed Order to Show Cause and all supporting papers to the opposing party before presenting the application to Chambers," Universitas provided advanced drafts of its papers to counsel for the various Respondents on September 5.  Since then, respective counsel for Universitas and the Respondents have had extensive communications, both written and over the phone, about a possible Order to Show Cause entered on consent.  These communications did not result in such a stipulated Order, however, because Mr. Carpenter's counsel would not agree to a preliminary injunction as broad as the one Universitas is seeking.  Universitas now proceeds against Mr. Carpenter by Order to Show Cause, and against the other Respondents by Notice of Motion.  After deciding to proceed

by Order to Show Cause against Mr. Carpenter alone, Universitas sent advanced drafts of its
revised, proposed Order to Show Cause and supporting papers to Anthony J. Siano, Mr.
Carpenter's attorney, on October 4 and again on October 8.

## FACTUAL BACKGROUND

### Daniel E. Carpenter

21.      An insurance agent by profession, Mr. Carpenter is an attorney by training whose
license to practice law was suspended by the State of Connecticut in 2009.  Attached as **Exhibit
7** is a true and complete copy of a January 6, 2009 Order from the Connecticut Superior Court
suspending Mr. Carpenter's law license.

22.      Mr. Carpenter has twice been found guilty of mail and wire fraud by juries in the
District of Massachusetts (in 2005 and 2008, respectively), on the same allegations of having
misappropriated client escrow funds.  Both times, the trial judge in the case overturned the guilty
verdicts.  The government is presently appealing the overturning of the second guilty verdict to
the First Circuit, with the appeal scheduled for oral argument on November 7.  See U.S. v.
Carpenter, Case No. 04-10029-GAO (D. Mass.), Case No. 11-2131 (1st Cir.).

23.      Mr. Carpenter is also a target of a federal grand jury investigation in Connecticut,
arising from the activities of the Charter Oak Trust.  Attached as **Exhibit 8** is a true and complete
copy of a District of Connecticut Search and Seizure Warrant, dated May 25, 2011, executed in
connection with a search of an office building that Mr. Carpenter (through one of his companies)
owns at 100 Grist Mill Road in Simsbury, Connecticut.  Mr. Carpenter is first among the targets
listed.

24. Magistrate Judge Pitman, in a report dated July 11, 2013, recommended that Mr. Carpenter, as a Nova officer or manager, be sanctioned for Nova's failure to comply with the Court's August 17, 2012 on post-judgment discovery. <u>See</u> Dkt. No. 278.

25. In a sentencing memorandum submitted by the United States following Mr. Carpenter's first (and ultimately overturned) conviction, the government alleged that Mr. Carpenter had withheld personal financial information from the U.S. Probation Office, and that he claimed a net worth of negative $129,000, even though he was (at the time) making substantial gifts to some of his employees and his prep school, and could afford to pay hundreds of thousands of dollars to his lawyers. Attached as **Exhibit 9** is a true and complete copy of the December 14, 2005 sentencing memorandum submitted by the United States in <u>U.S. v. Carpenter</u>, Case No. 04-10029-GAO (D. Mass.).

26. After Mr. Carpenter was found guilty for a second time on the same fraud charges in 2008, he requested permission to travel overseas while awaiting sentencing. The Government opposed his request, noting, among other things, "serious concerns about the completeness and truthfulness of Carpenter's representations to Probation and the Court about his assets and his business dealings." Specifically, according to prosecutors:

> Carpenter disclosed no personal income, no business holdings, no real estate assets, virtually no liquid assets, and a negative net worth. He also disclosed no significant assets held in the name of or for the benefit of his wife. Yet, as noted above, Carpenter now admits to spending over $10,000,000 in legal fees in recent years, and evidently has the means to travel extensively overseas.

Attached as **Exhibit 10** is a true and complete copy of the Government's Opposition to Mr. Carpenter's Request to Travel Internationally, dated April 14, 2010, and filed in <u>U.S. v. Carpenter</u>, Case No. 04-10029-GAO (D. Mass.).

27.     Mr. Carpenter admits that he does not maintain any bank accounts in his own name.  **Exhibit 47**, April 17 Tr. at 26:3-7.  Yet Mr. Carpenter has acknowledged having "easily" opened at least 200 bank accounts in the last few years.  **Exhibit 47**, April 17 Tr. at 23:13-16. These accounts have been presumably opened in the names of the numerous entities that Mr. Carpenter controls.

28.     The December 14, 2005 sentencing memorandum submitted by the Government (**Exhibit 9**) also claims that Mr. Carpenter had (even at that time, eight years ago) a history of attempts to evade the enforcement of civil judgments against him and his companies.  The memorandum includes the following as an example (at page 7 of **Exhibit 9**):

> When in April, 2004, the plaintiffs [in another case] finally located and obtained a writ of execution against property held by Carpenter in Florida, Carpenter promptly conveyed the land to his sister for $0, following which she proceeded to encumber it with mortgages held by various Carpenter-controlled businesses, presumably in an effort to so dissipate the value that the plaintiffs would effectively recover nothing.

29.     Mr. Carpenter has formed, or arranged for the formation of, scores, if not several hundred, companies, corporations and trusts.  Universitas has come across several dozen of these entities alone in its effort to discover what Mr. Carpenter did with Universitas' money after he arranged for it to be transferred out of the Charter Oak Trust.  These entities include Grist Mill Capital, Grist Mill Holdings, Hanover, Carpenter Financial, Phoenix, Audit Risk Indemnity Association, LLC, SADI Trust, Capital City Partners, LLC,  Benefit Concepts, Inc., Benefit Concepts Advisors, LLC, Benefit Concepts New York, Benistar 419 Plan Services, Benistar Client Services, Inc., Benistar Insurance Group, Benistar Insurance Group Holdings, LLC, BCNY Litigation Group, LLC, BPETCO Litigation Group, Birch Hill Partners, Carpenter Financial Group Welfare Benefit Trust, Nova Benefit Plans, LLC, Nova Group Holdings, LLC, Nova Partners, U.S. Benefits Group, Inc. and Worthy Investments, LLC.  See also **Exhibit 9**

11

(last page of 2005 sentencing memorandum noting that Mr. Carpenter was at that time associated with at least 30 entities).

30.     These entities, all of which claim an address of 100 Grist Mill Road in Simsbury, Connecticut (where Mr. Carpenter, through one of his companies, owns an office building), have confusingly interwoven chains of ownership.  For instance, a limited liability company might have two members, both of which are themselves companies or corporations, and each of which is owned by other companies or corporations.  For instance, at his April 17, 2013 deposition in this action, Mr. Carpenter testified that he controls Grist Mill Capital through his control of Grist Mill Capital's two members, Grist Mill Holdings and Caroline Financial Group.  **Exhibit 47**, April 17 Tr. at 16:24-25, 17:1-5.  Attached as **Exhibit 11** is a matrix prepared several years ago by Mr. Carpenter's accountants at Simione Macca & Larrow LLP, showing the ownership structure of several dozen entities.

31.     I draw the Court's attention to these entities not in an attempt to authoritatively describe the extent of Mr. Carpenter's tangled web of entities, but to demonstrate how thick the web is and why a preliminary injunction of the type Universitas is seeking is warranted.

32.     Mr. Carpenter is not shy about his conduct.  For instance, in a deposition in this action, he admitted that Nova is a "shell corporation"; that Grist Mill Holdings, LLC is his "alter ego" for collecting insurance commissions; and that in an effort to avoid creditors, he arranged for one of his companies, Moonstone Partners, LLC, to give a mortgage on property it owned to another one of his companies, Hanover Trust Company, 15 months after the property was purchased.  **Exhibit 47**, April 17 Tr. at 47:15-18, 76:2-5, 124:3-25.

33.     In addition, at a deposition in this action on April 17, 2013, Mr. Carpenter gave the following testimony:

All of – anything that I invested in is either held in an LLC or it's held in a trust, you know, for either estate planning purposes or protection, you know, asset protection, you know, type purposes, so that if something happens on one property, people can only sue that property and they cannot sue other properties that are owned by different trusts or different LLCs.

**Exhibit 47,** April 17 Tr. at 13:6-15.

### Universitas is a Judgment Creditor and Beneficiary

34.     Universitas is the beneficiary of the Charter Oak Trust in relation to two life insurance policies placed into the Trust by the late Sash A. Spencer, formerly the CEO of Holding Capital Group, Inc.  Mr. Spencer named Universitas the sole, irrevocable beneficiary of a Charter Oak Trust death benefit comprising the proceeds payable under two Lincoln Life policies totaling $30 million.  6/5/12 Court Order at 1-2 (dkt. no. 40).

35.     Nova is a Delaware corporation that purports to act as Trustee of the Charter Oak Trust.

36.     In May 2009, following Mr. Spencer's death in June 2008, Lincoln Life paid $30.7 million (including interest on the policy proceeds) to Mr. Bursey, Nova's President, who also purported to act as a Trustee of the Charter Oak Trust.  6/5/12 Court Order at 2.  Attached as **Exhibit 12** are true and complete copies of checks issued by Lincoln Life to Mr. Bursey as Trustee of the Charter Oak Trust, as payment on the two Lincoln Life policies insuring Mr. Spencer's life.  Attached as **Exhibit 13** is a true and complete copy of Nova's August 28, 2012 filing with the Connecticut Secretary of State, showing Mr. Bursey to be Nova's President (as well as Mr. Carpenter's wife, Molly, to be Nova's Treasurer).  Attached as **Exhibit 14** are true and complete copies of Nova filings with the Delaware Secretary of State, showing Mr. Carpenter to be Nova's Chairman.  See also **Exhibit 15** (true and complete copy of a July 12, 2013 Report and Recommendation, issued by Magistrate Judge Pitman, finding Mr. Bursey and

Mr. Carpenter to both be officers and/or managers of Nova and recommending that they be held in contempt for Nova's violation of a Court Order on discovery).

37.     Lincoln Life's payment of $30.7 million to the Charter Oak Trust in May 2009 came after Mr. Bursey, in 2008 and 2009, wrote several letters to the insurance carrier imploring it to pay out the insurance proceeds so that the Charter Oak Trust could pay Universitas.  The following are excerpts from Bursey's letters, written to induce Lincoln Life to pay out on the Spencer policies:

> "Mr. Spencer … decided to pass on a charitable legacy to his foundation Universitas Education, LLC as the beneficiary of his life insurance and he elected to entrust that responsibility to our Charter Oak Trust in order to make that happen. It is shameful that we cannot proceed with his desires as expeditiously as he would have expected if he were alive today."

> "You must understand that we have a charity to pay and no one can understand Lincoln's delay at this point."

Attached as **Exhibit 16** are true and complete copies of letters that Mr. Bursey wrote to Lincoln Life, dated October 22, 2008, December 11, 2008, March 6, 2009, April 22, 2009 and April 27, 2009, respectively.

38.     Following Lincoln Life's payment to the Charter Oak Trust in May 2009, Nova refused to pay any portion of the death benefit to Universitas.  6/5/12 Court Order at 2.

39.     By Arbitration Award dated January 24, 2011, Arbitrator Peter L. Altieri, Esq. held Nova liable to Universitas for a total of $26,525,535.88.  6/5/12 Court Order at 2.  The Arbitration Award required Nova to deposit this amount in the escrow account of its then-lead law firm, Updike Kelly & Spellacy, P.C.  Nova refused to do so.

40.     This Court confirmed the Arbitration Award on June 5, 2012 (dkt. no. 40), awarding Universitas pre-judgment interest at an annual rate of ten percent (10%) and entering judgment on June 7 for Universitas in the amount of $30,181,880.30 (dkt. no. 41).

41.     Following the entry of judgment, Nova has refused to pay anything to Universitas. On October 4, 2013, Nova's attorney wrote to the Court claiming that Nova is unable to comply with the Court's September 30, 2013 Order to deposit the judgment amount with the Court. **Exhibit 53**.

## IMPROPER TRANSFERS OF UNIVERSITAS' MONEY

42.     Through subpoenas to third parties, most importantly to TD Bank, Universitas has discovered that Mr. Bursey, the President of Nova, initially deposited the $30.7 million received from Lincoln Life into a TD Bank account standing in the name of the Charter Oak Trust (Account No. 424 277 4548); the deposit occurred on or about May 18, 2009.  Mr. Bursey was the only signatory on this account standing in the Charter Oak Trust's name (Account No. 424 277 4548).  Attached as **Exhibit 17** are true and complete copies of TD Bank documents showing Mr. Bursey to be the only signatory on Account No. 424 277 4548, as well as Mr. Bursey's deposit of $30.7 million into Account No. 424 277 4548, on or about May 18, 2009.

43.     Although Mr. Bursey was the only signatory on the Charter Oak Trust account, Mr. Carpenter helped arrange for that account to be opened.  Attached as **Exhibit 18** is a true and complete copy of a May 2009 e-mail exchange, produced by Grist Mill Capital pursuant to Court Order, documenting Mr. Carpenter's unsuccessful attempt to open a Charter Oak Trust account at Bank of America. Upon refusing to provide Bank of America with "Know Your Customer" disclosures as a condition of opening an account for the Charter Oak Trust, Mr. Carpenter informed Bank of America that "we have" opened Charter Oak Trust accounts at two other banks, presumably including TD Bank.

44.     Within 5 months of the May 2009 deposit into the Charter Oak Trust, Mr. Bursey and Mr. Carpenter – who at the time was awaiting sentencing following a second criminal trial

that ended in multiple guilty verdicts – transferred all of Universitas' money to TD Bank accounts standing in the names of other entities in Mr. Carpenter's control, including Grist Mill Capital, Grist Mill Holdings, Avon Capital, Carpenter Financial and Hanover. These other entities share the same business address as Nova (100 Grist Mill Road in Simsbury, Connecticut) and are all run by Mr. Carpenter. The TD Bank accounts of these entities all had Mr. Carpenter as a signatory, and were opened soon after Lincoln Life's payment of $30.7 million to the Charter Oak Trust for Universitas' benefit.

45.     The opening of these myriad accounts in the names of different companies allowed Mr. Carpenter to disperse Universitas' money after he received about $30.7 million from Mr. Bursey. The transfers of this money, from the Charter Oak Trust to entities that Mr. Carpenter controls, were made without consideration, and have no valid basis, particularly since Mr. Bursey and Carpenter were supposed to be holding this money in trust for Universitas. And, despite the validity of these transfers being the central issue on a prior turnover motion made by Universitas (dkt. no. 219), neither Mr. Carpenter nor anyone else has been able to provide a valid, documented basis for the transfers.

46.     Almost all of Universitas' money was initially transferred to Grist Mill Capital, a company that Mr. Carpenter readily acknowledges he controls. **Exhibit 47**, April 17 Tr. at 16:24-25, 17:1-5  At a deposition of Grist Mill Capital pursuant to Fed. R. Civ. P. 30(b)(6), the company's authorized agent and deposition designee, Peter A. Goldman, could not explain why the Charter Oak Trust was making separate transfers in the amounts of  $8,677,276.75, $2,186,566.00 and $19,800,000.00 to Grist Mill Capital in the months following Lincoln Life's payment to the Charter Oak Trust. Attached as **Exhibit 19** is a true copy of an excerpt from the transcription of the April 30, 2013 deposition of Mr. Goldman.

16

47.     Mr. Goldman also testified at the July 26, 2013 deposition of Nova and the Charter Oak Trust, as an authorized agent and deposition designee of both of these entities.  At this deposition, Mr. Goldman testified that Grist Mill Capital never loaned the Charter Oak Trust any money for the purposes of making premium payments on the Spencer policies.  Mr. Goldman also testified that, to his knowledge, no employee ever benefitted from the Charter Oak Trust, even though the Trust purports to be an employee welfare benefit plan.  Attached as **Exhibit 20** is a true copy of an excerpt from the transcription of the July 26, 2013 deposition of Mr. Goldman.

### Specific transfers

48.     On or about May 21, 2009, Mr. Bursey transferred $8,677,276.75 from the Charter Oak Trust's TD Bank account (Account No. 424 277 4548) into a TD Bank account standing in the name of Grist Mill Capital (Account No. 424 277 4712).  Attached as **Exhibit 21** are true and complete copies of TD Bank documents showing this transfer of $8,677,276.75.

49.     On or about May 26, 2009, Mr. Bursey transferred $2,186,566.00 from the Charter Oak Trust's TD Bank account (Account No. 424 277 4548) into the same Grist Mill Capital account (Account No. 424 277 4712).  Attached as **Exhibit 22** are true and complete copies of TD Bank documents showing this transfer of $2,186,566.00.

50.     These two deposits, from the Charter Oak Trust account (which held only Universitas' money paid by Lincoln Life) to the Grist Mill Capital account, represent the only two sources of funds for the Grist Mill Capital account during May 2009 and June 2009.  Attached as **Exhibit 23** are true and complete copies of the May 2009 and June 2009 monthly account statements for the Grist Mill Capital account (Account No. 424 277 4712), showing that in these months the only monies it had on deposit came from money held by the Charter Oak

Trust for the benefit of Universitas. Attached as **Exhibit 24** is a true and complete copy of the account-opening document for the Grist Mill Capital account at TD Bank with the Account Number 424 277 4712, listing Mr. Carpenter as a signatory on this account.

51.     On or about May 22, 2009, Mr. Carpenter transferred $2,100,000.00 from the Grist Mill Capital account (Account No. 424 277 4712) to the Grist Mill Holdings account (Account No. 424-261-7136). Attached as **Exhibit 25** is a true and complete copy of the account-opening document for the Grist Mill Holding account at TD Bank with the Account Number 424 261 7136, listing Mr. Carpenter as a signatory on this account. Attached as **Exhibit 26** are true and complete copies of a TD Bank document showing this transfer of $2,100,000.00. This money, $2,100,000.00, originated with the Charter Oak Trust, since the only funds that Grist Mill Capital had on deposit in May and June 2009 are the result of the transfers it received from the Charter Oak Trust (of $8,677,276.75 and $2,186,566.00, respectively).

52.     On or about June 9, 2009, Mr. Carpenter transferred $2,833,568.64 from the Grist Mill Capital account (Account No. 424 277 4712) to a JP Morgan account standing in the name of the Grist Mill Trust (JP Morgan Account No. 904 028 488). Attached as **Exhibit 27** are true and complete copies of a TD Bank document showing this transfer of $2,833,568.64. This money, $2,833,568.64, originated with the Charter Oak Trust, since the only funds that Grist Mill Capital had on deposit in May and June 2009 are the result of the transfers it received from the Charter Oak Trust (of $8,677,276.75 and $2,186,566.00, respectively).

53.     Also on or about June 9, 2009, Mr. Carpenter transferred an additional $965,314.17 from the Grist Mill Capital account (Account No. 424 277 4712) to a JP Morgan account standing in the name of the Grist Mill Trust (JP Morgan Account No. 904 028 488). Attached as **Exhibit 28** are true and complete copies of a TD Bank document showing this

transfer of $965,314.17. This money, $965,314.17, originated with the Charter Oak Trust, since the only funds that Grist Mill Capital had on deposit in May and June 2009 are the result of the transfers it received from the Charter Oak Trust (of $8,677,276.75 and $2,186,566.00, respectively).

54.     To reiterate, when Grist Mill Capital transferred a total $3,798,882.81 to the Grist Mill Trust on June 9, 2009, it was transferring money that originated from Lincoln Life's payment of $30.7 million to the Charter Oak Trust, since the only money that Grist Mill Capital had in its account came from deposits of $8,677,276.75 and $2,186,566, respectively, both of which came from the Charter Oak Trust account at TD Bank (account number 424 277 4548).

55.     On or about July 15, 2009, Mr. Carpenter transferred $1,200,000.00 from the Grist Mill Holdings account (Account No. 424-261-7136) to the Hanover account (Account No. 4725 632 940). This money, $1,200,000.00, originated with the Charter Oak Trust, since Grist Mill Holdings' money came from Grist Mill Capital, which in turn received its money from the Charter Oak Trust. Attached as **Exhibit 29** is a true and complete copy of a partial TD Bank account statement for Hanover for the month of July 2009 that shows the transfer. Attached as **Exhibit 30** is a true and complete copy of the account-opening document for the Hanover account at TD Bank with the Account Number 4725 632 940, listing Mr. Carpenter as a signatory on this account.

56.     On or about October 27, 2009, Mr. Bursey transferred $19,800,000.00 from the Charter Oak Trust's TD Bank account (Account No. 424 277 4548) into the Grist Mill Capital account (Account No. 424 277 4712). Attached as **Exhibit 31** are true and complete copies of TD Bank documents showing this transfer of $19,800,000.00.

57.     At the time of this transfer of $19,800,000.00, the Charter Oak Trust had not received any other deposits aside from the Lincoln Life payments in May 2009 (see **Exhibit 32** attached for true and complete copies of monthly account statements for May 2009 to October 2009).  This money, $19,800,000.00, was supposed to have been held in trust for Universitas; instead it was transferred to Grist Mill Capital – and Grist Mill Capital's corporate agent has no idea why (see **Exhibit 19**).  In fact, for this transfer of $19,800,000.00, Grist Mill Capital's general ledger describes it as "unknown depo" (meaning, "unknown deposit").  Attached as **Exhibit 33** is a true and complete copy of the part of Grist Mill Capital's general ledger that contains this description.

58.     On October 28, 2009, the day after the transfer of $19,800,000.00 from the Charter Oak Trust to Grist Mill Capital, Mr. Carpenter transferred $19,000,000.00 from the Grist Mill Capital account (Account No. 424 277 4712) to the Grist Mill Holdings account (Account No. 424-261-7136).  Attached as **Exhibit 34** are true and complete copies of TD Bank documents showing this transfer of $19,000,000.00, which is of course traceable to the $19,800,000.00 transfer from the Charter Oak Trust to Grist Mill Capital that occurred the previous day.

59.     On or about November 12, 2009, Mr. Carpenter transferred $6,710,065.92 from the Grist Mill Capital account (Account No. 424 277 4712) to the Avon Capital account at TD Bank (Account No. 424 277 4689).  Attached as **Exhibit 35** are true and complete copies of TD Bank documents showing this transfer of $6,710,065.92.  Attached as **Exhibit 36** is a true and complete copy of the account-opening document for the Avon Capital account at TD Bank with the Account Number 424 277 4689, listing Mr. Carpenter as a signatory on this account.

60.     On or about November 12, 2009, Mr. Carpenter transferred $4,140,000.00 from the Grist Mill Holdings account (Account No. 424 261 7136) to the Carpenter Financial account at TD Bank (Account No. 424 277 4697).  Attached as **Exhibit 37** are true and complete copies of TD Bank documents showing this transfer of $4,140,000.00.  Attached as **Exhibit 38** is a true and complete copy of the account-opening document for the Carpenter Financial account at TD Bank with the Account Number 424 277 4697, listing Mr. Carpenter as a signatory on this account.

61.     On or about December 3, 2009, Mr. Carpenter transferred $7,000,000.00 from the Grist Mill Holdings account (Account No. 424 261 7136) to the Carpenter Financial account at TD Bank (Account No. 424 277 4697).  Attached as **Exhibit 39** are true and complete copies of TD Bank documents showing this transfer of $7,000,000.00.

62.     On or about December 3, 2009, Mr. Carpenter transferred $5,000,000.00 from the Carpenter Financial account (Account No. 424 277 4697) to the Phoenix account at TD Bank (Account No. 424 277 4671).  Attached as **Exhibit 40** are true and complete copies of TD Bank documents showing this transfer of $5,000,000.00.  Attached as **Exhibit 41** is a true and complete copy of the account-opening document for the Phoenix account at TD Bank with the Account Number 424 277 4671, listing Mr. Carpenter as a signatory on this account.

63.     On or about December 3, 2009, Mr. Carpenter transferred $510,000.00 from the Grist Mill Capital account (Account No. 424 277 4712) to a JP Morgan account standing in the name of the Grist Mill Trust (JP Morgan Account No. 904 028 488).  Attached as **Exhibit 42** are true and complete copies of a TD Bank document showing this transfer of $510,000.00.

64.     Also on or about December 3, 2009, Mr. Carpenter transferred an additional $178,125.00 from the Grist Mill Capital account (Account No. 424 277 4712) to a JP Morgan

account standing in the name of the Grist Mill Trust (JP Morgan Account No. 904 028 488).
Attached as **Exhibit 43** are true and complete copies of a TD Bank document showing this
transfer of $178,125.00.

65.     Mr. Carpenter tried to prevent Universitas from learning about any of the bank
transfers described above.  When Universitas subpoenaed TD Bank following the entry of
judgment on June 7, 2012, Nova's then-attorney, Joseph M. Pastore, III, moved to quash the
subpoena (dkt. no. 56).  The Court denied this motion on August 17 (dkt. no. 133), and this
month sanctioned Mr. Pastore for filing this and other motions (dkt. no. 293).  Both Mr. Pastore
and Mr. Carpenter, moreover, each wrote letters to TD Bank threatening it with criminal
prosecution if it complied with Universitas' subpoenas.  Attached as **Exhibit 44** are true and
complete copies of these letters from Mr. Pastore and Mr. Carpenter, respectively.  Mr.
Carpenter further sought to fight disclosure of the transfers by arranging for the filing a lawsuit
against Universitas and TD Bank in Connecticut Superior Court.  (The lawsuit, which named
Grist Mill Capital, Grist Mill Holdings and Phoenix as the plaintiffs, was withdrawn within a
month of filing, before the court took any action.  See Grist Mill Capital, LLC v. TD Bank et al.,
Case No. 12-6037179-S (Conn. Super. Ct.)).   As Magistrate Judge Pitman has noted, Nova has
"resisted all efforts" to enforce Universitas' judgment in this action, and Nova's principals and
attorneys have improperly threatened third parties from which Universitas has sought discovery.
11/21/12 Order at 1-2, 8 (dkt. no. 176).

### Grist Mill Trust Transfers

66.     In numerous communications with Universitas' counsel, counsel for the Grist
Mill Trust has asserted that the transfers of $2,833,568.64 and $965,314.17, respectively, from
Grist Mill Capital to Grist Mill Trust (see **Exhibits 27-28**), were loan repayments.  Attached as

**Exhibit 45** are documents furnished to Universitas' counsel that purport to be documentation of two loan agreements (dated August 11, 2006 and October 1, 2007, respectively) between Grist Mill Capital and the Grist Mill Trust.

67.     **Exhibit 45** shows that for each of the two alleged loans, Mr. Carpenter signed on behalf of Grist Mill Capital, and Mr. Bursey signed on behalf of the Grist Mill Trust.

68.     With respect to the above-documented transfers of money, from Grist Mill Capital to the Grist Mill Trust, these transfers are fraudulent and have no valid basis, particularly since they were made by Mr. Bursey and Mr. Carpenter, the people who made the initial transfers from the Charter Oak Trust to Grist Mill Capital, and who knew that the money being transferred by Grist Mill Capital to the Grist Mill Trust should have stayed in the Charter Oak Trust for Universitas' benefit.

69.     Additionally, counsel for the Grist Mill Trust has asserted that the transfers of $510,000.00 and $178,125.00, respectively, on December 3, 2009, were also loan repayments by Grist Mill Capital.  Attached as **Exhibit 46** are documents furnished to Universitas' counsel that purport to be documentation of the loans to which these December 2009 transfers relate.

70.     These December transfers, from Grist Mill Capital to the Grist Mill Trust, were also fraudulent and have no valid basis, for the reasons stated above and in Universitas' memorandum of law accompanying this declaration.

### MR. CARPENTER CONTROLS THE ENTITIES THAT
### IMPROPERLY TRANSFERRED AND RECEIVED UNIVERSITAS' MONEY

71.     Aside from arguably the Grist Mill Trust, Mr. Carpenter is an alter ego of the entities to which Universitas' money was transferred. In fact, in a recent letter to the Court, Nova's attorney Ira Kleiman discussed how Universitas' money was transferred first to Grist

Mill Capital, and then to Grist Mill Holdings, Avon Capital, Carpenter Financial Group, Phoenix Capital and the Grist Mill Trust.  See **Exhibit 53**.  Mr. Kleiman represented to the Court that "Mr. Carpenter is not in control of at least one of these entities," and then only discussed how Mr. Carpenter (allegedly) does not control the Grist Mill Trust.  The upshot is that Mr. Carpenter is an alter ego of all of the entities mentioned by Mr. Kleiman, except for the Grist Mill Trust (which Mr. Carpenter nonetheless controls, as a Trustee, along with his wife and Mr. Bursey).

72.     Attached as **Exhibit 47** is a true copy of excerpts from the transcription of the April 17, 2013 deposition of Mr. Carpenter in this litigation.  At his deposition, as reflected in the excerpts contained within **Exhibit 47**, Mr. Carpenter testified that:

a.     Nova is a "shell corp." (April 17 Tr. at 76:2-5);

b.     He is the chairman and secretary of Carpenter Financial (April 17 Tr. at 35:6-13);

c.     Grist Mill Holdings is Mr. Carpenter's "alter ego" (April 17 Tr. at 47:15-18);

d.     He controls Grist Mill Capital through his control of Grist Mill Capital's two members, Grist Mill Holdings and Caroline Financial Group (April 17 Tr. at 16:24-25, 17:1-5);

e.     Grist Mill Capital seized millions of dollars from a Charter Oak Trust bank account (April 17 Tr. at 90:18-25, 91:2-6);

f.     He is the sole officer/director of both the Hanover and Phoenix companies (April 17 Tr. at 27:13-20, 34:21-24, 35:6-25, 56:22-25, 57:2-4);

    g.     He is the Chairman of, the only officer of, and the only person affiliated

              with, Caroline Financial Group, Inc. ("Caroline Financial")

              (April 17 Tr. at 8:5-10, 14:22-25, 15:2-25, 16:2-4);

    h.     The number of entities for which Caroline is the managing member and

              tax matters partner was "too numerous to mention" (April 17 Tr. at 16:15-

              23);

    i.     He arranged for Hanover to hold a mortgage on real property owned by

              Moonstone Partners, LLC, another company of his, as protection against

              his Boston-based creditors (April 17 Tr. at 124:3-25)

At his first deposition in October 2012, Mr. Carpenter asserted his Fifth Amendment right against self-incrimination in response to most if not all questions about Nova, the Charter Oak Trust and Grist Mill Capital.

    73.    Mr. Carpenter also controls Avon Capital, as evidenced by **Exhibit 36**, containing a true and complete copy of documents that Mr. Carpenter submitted to TD Bank in May 2009 when he opened an account in Avon Capital's name.  These documents show Mr. Carpenter to be Chairman of Avon's Managing Member, which is Grist Mill Capital.

    74.    Mr. Carpenter, his wife Molly Carpenter and Mr. Bursey are all Trustees of the Grist Mill Trust, as demonstrated by **Exhibits 48-49**, containing, respectively, a true and complete copy of a JP Morgan account opening document for the Grist Mill Trust (listing Ms. Carpenter and Mr. Bursey as Trustees), as well as a copy of a life insurance policy owned by the Grist Mill Trust (which is signed by Mr. Carpenter and lists him as a Trustee).

    75.    At a May 9, 2013 hearing in this action, Mr. Carpenter disclaimed any official role at the Grist Mill Trust, although he did acknowledge that the Grist Mill Trust often consults

him on tax matters (which is easy enough to do since he owns and works out of the building

from which the Grist Mill Trust is operated). Attached as **Exhibit 50** (May 9 Tr. at 35:8-16) is a

true copy of excerpts from the transcription of the Mr. Carpenter's May 9, 2013 testimony in this

litigation.

76.     At the May 9 hearing, Mr. Carpenter also testified that the Grist Mill Trust had

"excess cash," with "hundreds of millions of dollars coming in every year." **Exhibit 50**, April

17 Tr. at 43:12-16.

77.     In response to being subpoenaed to testify at the May 9 hearing on Universitas'

turnover motion, Mr. Bursey, by letter to the Court, asserted his Fifth Amendment right against

self-incrimination in response to all questions about the following topics (among others):

- Mr. Bursey's role in the Charter Oak Trust, Nova, Grist Mill Trust, Grist Mill Capital,
  LLC and related entities; and

- Mr. Carpenter's role in Nova, the Charter Oak Trust, Grist Mill Trust, Grist Mill
  Capital and related entities.

See **Exhibit 6**.

78.     Nova's principals have also arranged for monies belonging to the Charter Oak

Trust to bypass the Charter Oak Trust entirely. For instance, in June 2011, the Charter Oak Trust

settled a federal lawsuit that the Penn Mutual Life Insurance Company ("Penn Mutual") brought

against it relating to a policy insuring the life of someone with the last name Martinez (Policy

No. 8214580), which policy the Charter Oak Trust owned. As part of the settlement, Penn

Mutual agreed to settle the lawsuit for a payment of $600,000 to the Charter Oak Trust – except

that when Penn Mutual issued the $600,000 check, Nova arranged for that check to be made

payable to Grist Mill Capital, rather than the Charter Oak Trust, even though Grist Mill Capital

26

was not a party to the litigation being settled.  Attached as **Exhibit 51** is a true and complete copy of a Stipulation of Dismissal with Prejudice, dated June 9, 2011, filed in the litigation between Penn Mutual and the Charter Oak Trust (indicating, among other things, that Grist Mill Capital was not a party to the litigation).  Attached as **Exhibit 52** is a true and complete copy of a $600,000 check, dated June 7, 2011, issued by Penn Mutual to Grist Mill Capital, as part of the resolution of the litigation between the Charter Oak Trust and Penn Mutual.

79.      Attached as **Exhibit 53** is a true and complete copy of an October 4, 2013 letter from Nova's counsel, Ira Kleiman, to the Court (exhibit to the letter omitted).


Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and complete.

Dated: New York, New York
      October 9, 2013

/s/ Michael Barnett      .
MICHAEL BARNETT
