## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | ) | |
| | ) | |
| Petitioner/Judgment Creditor | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| AVON CAPITAL, LLC, | ) | |
| | ) | |
| Respondent/Judgment Debtor, | ) | |
| | ) | |
| ASSET SERVICING GROUP, LLC, | ) | |
| | ) | |
| Respondent, Garnishee, | ) | Case No. 14-FJ-05-HE |
| | ) | |
| SDM HOLDINGS, LLC, | ) | |
| | ) | |
| Respondent/Garnishee, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AVON CAPITAL, LLC, a Wyoming Limited | ) | |
| Liability Company, | ) | |
| | ) | |
| Intervenor. | ) | |

## PETITIONER'S OPENING BRIEF IN SUPPORT OF MOTION FOR POST-JUDGMENT DISCOVERY PURSUANT TO COURT ORDER DATED APRIL 11, 2019

<u>**TABLE OF CONTENTS**</u>

*INTRODUCTION*.................................................................................................*1*

*STATEMENT OF FACTS* ...................................................................................*2*

   **I.**   **Background Information on Daniel Carpenter's Criminal Network and Conviction.** ....................................................................................................**2**

   **II.**   **The Three Entities Called Avon Capital, LLC.** ....................................**5**

      a.   Avon Capital, LLC, a Wyoming Limited Liabity Company. ...............................5

      b.   Avon Capital, LLC, a Nevada Limited Liability Company. ...............................6

      c.   Avon Capital, LLC, a Connecticut Limited Liability Company. .........................7

   **III.**  **Avon Capital, LLC's Acquisition of SDM Holdings, LLC.** ..................**8**

   **IV.**   **The Membership Purchase Agreement Between SDM Holdings, LLC and Avon Capital, LLC.** .......................................................................................**9**

   **V.**   **Donald Trudeau's Affiliation with Carpenter and Carpenter's Affiliated Entities.** ..............................................................................................**10**

*ARGUMENT*....................................................................................................*12*

   **I.**   **Universitas is Permitted to Seek Post-Judgment from Avon-WY.** ...**12**

      a.   Universitas Can Seek Discovery into Other Judgment Debtors' Assets from Avon-WY. .................................................................................................... 13

      b.   Universitas Can Seek Discovery into Avon-WY's Assets and Financial Affairs. 14

   **II.**   **Universitas Could Enforce its Judgment Against Assets Owned by Avon-WY.** 16

      a.   Universitas Can Recover Avon-WY's Fraudulently Conveyed Assets by Having the Court Set These Transactions Aside. .................................................. 17

      b.   Universitas Can Recover from Avon-WY by Piercing the Corporate Veil Given its Alter Ego Status with Other Judgment Debtors. .................................. 18

*CONCLUSION* ................................................................................................................ *21*

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bd. Of County Comm'rs v. Freeport-Mcmoran Copper & Gold, Inc.*, No. CIV-12-601
   (C), 2013 U.S. Dist. LEXIS 185755 (W.D. Okla Sep. 5, 2013) ................................... 19

*Carpenter v. Comm'r, IRS*, No. 3:13-cv-563(SRU), 2018 U.S. Dist. LEXIS 66455 (Dist.
   Conn. Mar. 29, 2018) ............................................................................................... 6, 11

*Cyprus Amax Minerals Co. v. TCI Pac Communs., Inc.*, No. 11-CV-252 (GKF) (PJC),
   2012 U.S. Dist. LEXIS 129577 (N.D. Okla. Sept. 12, 2012) ....................................... 19

*GreenHunter Energy, Inc. v. W. Ecosystems Tech., Inc.*, 2014 WY 144, 337 P.3d 454
   (Wyo. 2014) ............................................................................................................ 18, 19

*Iantosca v. Step Plan Servs.*, 604 F.3d 24 (1st Cir. 2010) .................................................. 11

In re *Estate of Reed*, 566 P.2d 587 (Wyo. 1977) ............................................................... 19

*Mantle v. North Star Energy & Constr. LLC*, 2019 WY 29, 2019 Wyo. LEXIS 29 (Wyo.
   2019) ................................................................................................................. 18, 19, 20

*Moran v. Avon Capital, LLC, a Wyoming Limited Liability Corporation*, Case No. 10-cv-
   00393-HE (W.D. Okla.) .................................................................................................. 9

*Ridgerunner, LLC v. Meisinger*, 2013 WY 31, 297 P.3d 110 (Wyo. 2013) ..................... 18

*United States v. Carpenter*, 190 F. Supp. 3d 260 (Dist. Conn. 2016) .......................passim

*Universitas Educ., LLC v. Nova Group, Inc.*, No. 11-CV-1590-LTS-HBP, 2014 U.S.
   Dist. LEXIS 109077 (S.D.N.Y. Aug. 7, 2014) ......................................................passim

**Statutes**

Wyo. Stat. § 17-29-304 (2016) ......................................................................................... 19

Wyo. Stat. § 34-14-205 (2006) .................................................................................... 19, 20

**Rules**

Fed. R. Civ. P. Rule 69(a) ................................................................................................ 12

## INTRODUCTION

Universitas Education, LLC ("Universitas") filed this ancillary proceeding to enforce its money judgment against Avon Capital, LLC under the belief that SDM Holdings, LLC is a subsidiary of the judgment debtor, and thus has assets of Avon Capital, LLC against which the judgment could be enforced. Avon Capital, LLC, a Wyoming limited liability company ("Avon-WY") intervened in this proceeding to protect its ownership of SDM Holdings, LLC. Avon-WY claims to be distinct from the Avon Capital, LLC named in Universitas' money judgment. There are three Avon Capital, LLCs—Avon-WY, one incorporated in Nevada, and one incorporated in Connecticut. As proof of their distinction they highlight that Avon-WY was incorporated in a different state and has a different primary address than the other Avon Capital, LLCs, and submitted a declaration from the sole member of Avon-WY, Donald Trudeau. Avon-WY further claims that since it is not the judgment debtor, it is immune from Universitas' post-judgment discovery and enforcement.

Universitas maintains that Avon-WY is a judgment debtor, but also suggests that the issue is likely irrelevant for discovery purposes. Fed. R. Civ. P. 69, permits post-judgment discovery of third parties and judgment debtors in order to locate a judgment debtor's assets. As will be detailed in Sections II and III, *infra*, Avon-WY's intricate involvement with other judgment debtors also permits discovery into Avon-WY itself. Universitas is not currently seeking to enforce its judgment against Avon-WY, but may seek to do so in the future. As will be detailed in Sections II and III, *infra*, Avon-WY helped

facilitate the fraudulent activity of other judgment debtors, and thus the Court can set aside these fraudulent conveyances and allow Universitas to enforce its judgment against Avon-WY's fraudulently obtained assets. Given Avon-WY's relationship with other judgment debtors, Universitas could also recover from Avon-WY through alter ego liability.

## **STATEMENT OF FACTS**

As a consequence of litigation with Daniel Carpenter ("Carpenter") and affiliated corporations, Petitioner Universitas Education, LLC ("Universitas") has a money judgment against Avon Capital, LLC for $6,710,065.92. Universitas now seeks to undertake post-judgment discovery to locate and identify assets against which to enforce its judgment. The facts underlying this proceeding have been extensively litigated, in both criminal and civil courts. The findings of facts from these cases are referenced throughout this brief.

I.    Background Information on Daniel Carpenter's Criminal Network and Conviction.

On June 6, 2016 Carpenter was found guilty of thirty-two counts of mail fraud and wire fraud, conspiracy to commit mail and wire fraud, thirteen counts of illegal monetary transactions, ten counts of money laundering, conspiracy to commit money laundering, and aiding and abetting the foregoing substantive offenses. *See United States v. Carpenter*, 190 F. Supp. 3d 260 (Dist. Conn. 2016). All of these charges stemmed from actions taken by companies within Carpenter's criminal network. *See id*. The ultimate aim of the Carpenter criminal network was the resale of "stranger-originated life insurance" policies to third party investors. *See id.* at 263-264. Insurance companies do not provide these policies, and thus Carpenter created a massive and intricate web containing hundreds of companies in

order to facilitate the creation and sale of such policies without suspicion from insurance companies. *See Universitas Educ., LLC v. Nova Group, Inc.*, No. 11-CV-1590-LTS-HBP, 2014 U.S. Dist. LEXIS 109077, at *7 (S.D.N.Y. Aug. 7, 2014). The companies comprising Carpenter's criminal enterprise regularly changed as a result of the creation of new entities and the dissolution of existing companies. *See Carpenter*, 190 F. Supp. 3d at 274 (stating that "corporate entities were created and discarded at Mr. Carpenter's direction when it suited his purposes," and providing an example where Carpenter ordered the dissolution of a company and created a new company in order to create the impression that the entities operating out of the Stamford address were distinct from the entities running out of the Simsbury address). Furthermore, participants in Carpenter's criminal network did not adhere to formal corporate structures, causing business activities and transactions to blur corporate lines, and in turn making it difficult to attribute certain activities to a distinct corporate entity. *See id*. at 274. As explained by the *Carpenter* court:

> During the time period relevant to this case, Mr. Carpenter controlled a number of business entities located in offices at 100 Grist Mill Road in Simsbury, Connecticut and 300 Stamford Place in Stamford, Connecticut (the "Benistar Entities"). Of the numerous different entities that operated out of these locations, the most significant for purposes of this case are Benistar Admin Services, TPG Group, Grist Mill Trust, Grist Mill Capital, Avon Capital, and the Charter Oak Trust.

*Carpenter*, 190 F. Supp. 3d at 273. The *Carpenter* court goes on to explain that the Carpenter criminal network sought to create an appearance of distinction between the Stamford address and the Simsbury address, but they were in fact both extensions of the same criminal operation. *See id.* at 287 n. 42 (detailing exchange between Carpenter and Donald Trudeau, who worked at Stamford office, regarding relationship between Stamford

3

and Simsbury locations); Chernow. Decl. Exhibit 1. The address located at 100 Grist Mill Road in Simsbury, Connecticut was subject to investigations by both the Internal Revenue Service ("IRS") and the Department of Labor ("DOL"). Chernow Decl. Exhibit 2 and Exhibit 3. The Stamford address was a subject of that same DOL investigation. Chernow Decl. Exhibit 2.

The transactions involving Universitas' money were the basis for Carpenter's convictions on all counts of money laundering and illegal monetary transactions. *See Carpenter*, 190 F. Supp. 3d at 292. The money laundering and illegal monetary transactions stem from activities related to the Charter Oak Trust. *See id*. at 292. The Charter Oak Trust was a corporate entity controlled by Carpenter. *Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077, at *7. Carpenter created the Charter Oak Trust as a vehicle for acquiring life insurance policies for resale to third party investors. *Carpenter*, 190 F. Supp. 3d at 273. All of the policies acquired by the Charter Oak Trust were obtained through fraud. *Id*. at 297-299. One such policy was for Sash Spencer, the beneficiary of which was Universitas. Following Spencer's death, the Charter Oak Trust received $30.67 million in insurance proceeds, and subsequently fraudulently transferred and laundered this money to other entities throughout the Carpenter criminal network, in breach of its fiduciary duty to Universitas. *See id.* at 299-300; *Universitas Educ.*,  2014 U.S. Dist. LEXIS 109077, at *10. These transactions were undertaken in part to hide assets from Universitas. *See Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077, at *7. Among these transactions was a fraudulent conveyance  on November 11, 2009 of $6,710,065.92 to Avon Capital, LLC. *See id.* at *11.

4

II.    The Three Entities Called Avon Capital, LLC.

Carpenter is involved with at least three Avon Capital, LLC's: (1) Avon Capital, LLC, a Wyoming limited liability company ("Avon-WY"), (2) Avon Capital, LLC, a Nevada limited liability corporation ("Avon-NV"), and (3) Avon Capital, LLC, a Connecticut limited liability company ("Avon-CT"). Each of these companies are analyzed in turn below.

a.    Avon Capital, LLC, a Wyoming Limited Liability Company.

Avon-WY was incorporated at Carpenter's behest on May 18, 2007. Chernow Decl. Exhibit 4 and Exhibit 5. He incorporated in Wyoming because he believed it had the most favorable laws for life settlement transactions. Chernow Decl. Exhibit 4. Avon-WY's manager was Caroline Financial Group, Inc. ("Caroline"). Chernow Decl. Exhibit 5. Carpenter was in complete control of Caroline. *Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077, at *7. Avon-WY's principal address and mailing address were both listed as 100 Grist Mill Lane, Simsbury, CT 06070. Chernow Decl. Exhibit 6. Caroline's address was also 100 Grist Mill Road, Simsbury, CT 06070. Chernow Declaration Exhibit 5. Caroline was also a target of the DOL investigation. Chernow Decl Exhibit 2.

Avon-WY's registered agent resigned on April 9, 2009. Chernow Decl. Exhibit 7. Avon-WY was administratively dissolved on June 17, 2009 because it had no registered agent. Chernow Decl. Exhibit 7. Avon-WY was reinstated on November 15, 2010 by Donald Trudeau ("Trudeau"). Chernow Decl. Exhibit 8. Prior to this reinstatement Trudeau had no formal relationship with Avon-WY. *See* Chernow Decl. Exhibit 9. Caroline continued to manage Avon-WY after it was reinstated, and both the principal and mailing

address of Avon-WY remained 100 Grist Mill Lane, Simsbury, CT 06070. Trudeau changed the principal address to 300 First Stamford Place, Suite 201, Stamford, CT 06902 on November 22, 2011. Chernow Decl. Exhibit 10.

Avon-WY later received life insurance policies from Tranen Capital Alternative Investment Fund, Ltd ("Tranen Capital"). *Carpenter*, 190 F. Supp. 3d at 291. Avon-WY subsequently sold these policies to third party investors. *Id*. This transaction occurred on or about November 16, 2010. *See id.* at 291-292 (explaining that Trudeau forwarded congratulatory email from third party investors to Carpenter on November 16, 2010).

b. Avon Capital, LLC, a Nevada Limited Liability Company.

Avon-NV was incorporated at Carpenter's direction by an employee of Benistar Administrative Services, Inc ("BASI"). Chernow Decl. Exhibit 4. Avon-NV was managed by Grist Mill Capital, LLC. Chernow Decl. Exhibit 11. Grist Mill Capital, LLC was controlled by Carpenter. *Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077, at *7. The address for Grist Mill Capital, LLC was 100 Grist Mill Road, Simsbury, CT 06070. Chernow Decl. Exhibit 12. Grist Mill Capital, LLC was a target of both the DOL investigation and the IRS investigation. *See Carpenter v. Comm'r, IRS*, No. 3:13-cv-563(SRU), 2018 U.S. Dist. LEXIS 66455, at *1-*2 (Dist. Conn. Mar. 29, 2018) (insinuating that Grist Mill Capital, LLC was a target of the IRS investigation); Chernow Decl. Exhibit 2.

The $6,710,065.92 fraudulently conveyed to Avon Capital, LLC on November 11, 2009 was held in an account owned by Avon-NV at TD-Bank. (*See* Dkt. 56, page 4) (explaining that Avon-NV was owner of TD-Bank account ending in 4689). This account

was controlled by Carpenter. Chernow Decl. Exhibit 13. On June 9, 2010, Avon-NV closed their TD-Bank account and transferred all money in the account to an account with People's United Bank. Chernow Decl. Exhibit 14. This account was also controlled by Carpenter. Chernow Decl. Exhibit 15.

    c.  <u>Avon Capital, LLC, a Connecticut Limited Liability Company.</u>

Avon-CT was incorporated by Wayne Bursey and Jack E. Robinson. Chernow Decl. Exhibit 16. Wayne Bursey was Carpenter's brother-in-law and co-conspirator. *See Carpenter*, 190 F. Supp. 3d at 301 (finding Wayne Bursey to be Carpenter's co-conspirator for charge of conspiracy to commit money laundering). Wayne Bursey was also a target of the DOL investigation and the IRS investigation, and the trustee of the Charter Oak Trust. Chernow Decl. Exhibit 2 and Exhibit 3. Jack E. Robinson was another Carpenter co-conspirator. *See Carpenter*, 190 F. Supp. 3d at 275-276 (using email from Robinson as evidence of both creation and purpose of Carpenter criminal enterprise). Mr. Robinson was also a target of the DOL investigation. Chernow Decl. Exhibit 2. Avon-CT was managed by Wayne Bursey. Chernow Decl. Exhibit 17. Avon-CT's address was 100 Grist Mill Road, Simsbury, CT 06070. Chernow Decl. Exhibit 16. Both the residential and business address provided by Mr. Bursey was 100 Grist Mill Road, Simsbury, CT 06070. Chernow Decl. Exhibit 16. The business and residential address provided by Jack E. Robinson was 2187 Atlantic Street, Stamford, CT 06902.[1] Chernow Decl. Exhibit 16.

---

[1] 2187 Atlantic Street, Stamford, CT 06902 was the Stamford address for the Carpenter criminal network before 300 First Stamford Place, Ste. 201, Stamford, CT 06902. *See* Chernow Decl. Exhibit 31.

III.    Avon Capital, LLC's Acquisition of SDM Holdings, LLC.

SDM Holdings, LLC ("SDM") is an Oklahoma limited liability company that owned a portfolio of life settlement insurance policies. Chernow Decl. Exhibit 18. Thomas and Jane Moran owned one hundred percent of the outstanding equity interest in SDM. On December 30, 2009, Avon-WY entered into a Membership Purchase Agreement (the "Agreement") with the Morans to purchase their outstanding equity interest in SDM for $4,395,502.60. Chernow Decl. Exhibit 19. Carpenter admitted involvement in this transaction. Chernow Decl. Exhibit 4.

Pursuant to the Agreement, the Morans transferred their equity interest in SDM to Avon-WY. Chernow Decl. Exhibit 20. The Agreement obligated Avon-WY to make payment in two installments: one installment of $2,197,751.30 "on or about December 30, 2009", and another payment of $2,197,751.30 "on or before January 30, 2010."[2] On December 31, 2009 Avon-NV wired $1,292,210.66 to the Morans. *See* Chernow Decl. Exhibit 21. Between January 4 and January 7, 2010 Avon-NV wired the Morans another $906,134.98. *See* Chernow Decl. Exhibit 21. SDM subsequently confirmed that all of these payments were made pursuant to Avon-WY's payment obligations in the Agreement. Chernow Decl. Exhibit 22.

On April 9, 2010 the Morans notified Trudeau that they were terminating the Agreement because Avon failed to pay the remainder of the purchase price. Chernow Decl. Exhibit 23. On April 19, 2010 the Morans filed a complaint against Avon-WY for breach

---

[2] After due diligence and negotiation, the amount for the second payment was changed to $1,264,845.72. Chernow Decl. Exhibit 18.

of the Agreement.[3] On November 19, 2010 Avon-WY and the Morans filed an ADR Report indicating they reached a settlement in the matter.[4] An Administrative Closing Order was filed on November 22, 2010.[5] On November 30, 2010 the Morans received $75,000 from Avon-NV. Chernow Decl. Exhibit 24. Avon-NV subsequently wired the Morans $100,000 each month through July of 2011. Chernow Decl. Exhibit 24. Upon information and belief, SDM was at some point sold or transferred to Grist Mill Capital, LLC. *See* Chernow Decl. Exhibit 25.

    IV.    <u>The Membership Purchase Agreement Between SDM Holdings, LLC and Avon Capital, LLC.</u>

Aspects of the Agreement suggest that Avon-WY was not distinct from other entities within the Carpenter criminal network. First, Trudeau signed the Agreement on behalf of Avon-WY as an authorized signatory on December 30, 2009. Avon-WY's address in the Agreement was a Connecticut address, and the jurisdiction for legal proceedings was limited to the District of Connecticut and the Western District of Oklahoma (where SDM was located). Section 10.1 of the Agreement identifies Trudeau as the contact person for Avon-WY, and states that notice should also be sent to Jack E. Robinson.

---

[3] *See Moran v. Avon Capital, LLC, a Wyoming Limited Liability Corporation*, Case No. 10-cv-00393-HE (W.D. Okla.) (Dkt. 1).

[4] *See Moran v. Avon Capital, LLC, a Wyoming Limited Liability Corporation*, Case No. 10-cv-00393-HE (W.D. Okla.) (Dkt. 46).

[5] *See Moran v. Avon Capital, LLC, a Wyoming Limited Liability Corporation*, Case No. 10-cv-00393-HE (W.D. Okla.) (Dkt. 47).

Section 8.22 of the Agreement obligated Avon-WY to use Asset Servicing Group, LLC ("ASG") to service the life settlement insurance policies acquired from SDM. Avon-WY utilized ASG's services, and was billed by ASG every month, beginning the month after the Agreement. Chernow Decl. Exhibit 26.  Avon-WY's bills from ASG were paid by Avon-NV. Chernow Decl. Exhibit 26. ASG continued to service the SDM policies and receive payment from Avon-NV after Avon-WY dissolved. ASG was occasionally paid by check—these checks were signed by Carpenter. *See* Chernow Decl. Exhibit 26.

V.    Donald Trudeau's Affiliation with Carpenter and Carpenter's Affiliated Entities.

Trudeau is another affiliate of  Carpenter's criminal enterprise. *See Carpenter*, 190 F. Supp. 3d at 299 (stating as part of analysis into charge of conspiracy to commit mail and wire fraud that "[t]he evidence established beyond a reasonable a reasonable doubt that [Carpenter] conspired with Ed Waesche, Charles Westcott, and Don Trudeau . . . ."). Trudeau's involvement in the Carpenter criminal enterprise was focused on the resale of fraudulently obtained life insurance policies. *See Carpenter*, 190 F. Supp. 3d at 290-292 (detailing Trudeau's involvement in the resale of fraudulently obtained life insurance policies for Carpenter criminal enterprise). Emails between Trudeau and Carpenter were the basis of one count of fraud and eight counts of wire fraud against Carpenter. *See id.* at 298 ("The emails that form the basis of Counts 4, 8, 10, 12, 14, 16, 18, 30, and 32 were sent by Don Trudeau . . . .").

Trudeau is the president of BASI. *Id.* at 273. BASI was founded by Carpenter. Chernow Decl. Exhibit 27. The State of Massachusetts and the Southern District of New

York both found BASI to be an alter ego of Carpenter. *See Iantosca v. Step Plan Servs.*, 604 F.3d 24, 27-28 (1st Cir. 2010) ("[t]he Massachusetts state court pierced the corporate veil and extended liability to five additional corporate entities controlled by Carpenter: Benistar Admin Services, Benistar Employer Services Trust Corp., Benistar Ltd., Carpenter Financial Group, LLC, and U.S. Property Exchange. In so doing, the court found that Carpenter exercised control over all entities; that assets were intermingled; and that the entities were under-capitalized and failed to observe corporate formalities."); Chernow Decl. Exhibit 28. At the time of the transactions in question BASI had two addresses: (1) 100 Grist Mill Road, Simsbury, CT 06070, and (2) 300 First Stamford Place, Suite 201, Stamford, CT 06902. *See* Chernow Decl. Exhibit 29. BASI's taxes provide 100 Grist Mill Road, Simsbury, CT 06070 as the address for every single officer and director of the company. Chernow Decl. Exhibit 30.

Trudeau is the managing member of a BVI fund formally affiliated with Tranen Capital. Chernow Decl. Exhibit 29. Trudeau is also involved with TPG Group, Inc., another Carpenter related company. Chernow Decl. Exhibit 29. Trudeau, BASI, and TPG Group, Inc. were all subjects of the DOL investigation. Chernow Decl. Exhibit 2. BASI was also a subject of the IRS investigation. *See Comm'r, IRS*, 2018 U.S. Dist. LEXIS 66455 at *21. Trudeau was also a signatory for Yates Worldwide Holdings Ltd. ("Yates") on two separate agreements. *See Carpenter*, 190 F. Supp. 3d at 291. The first agreement conveyed life insurance policies from Charter Oak Trust to Yates, and the second agreement sold these same policies from Yates to Tranen Capital. *See Id.* at 291.

## **ARGUMENT**

The Court requested briefing regarding post-judgment discovery of Avon-WY and related issues of collectability. These issues are addressed below in turn.

I.      Universitas is Permitted to Seek Post-Judgment from Avon-WY.

Universitas is permitted to seek post-judgment discovery from any judgment debtor and any nonparty to the judgment, and thus may seek such discovery from Avon-WY. Fed. R. Civ. P. 69 (a)(2) authorizes a judgment creditor to seek post-judgment discovery into any relevant matter, from any person, in order identify and locate the judgment debtor's assets, wherever they are located. *See Sanderson v. Winner*, 507 F. 2d 477, 480 (10th Cir. 1974); *see also National Service Industries, Inc. v. Vafla Corp.*, 694 F. 2d 246, 250 (11th Cir. 1982) (citations omitted); *Hartford Fire Ins. Co. v. P & H Cattle Co.*, No. 05-2001-DJW, 2009 U.S. Dist. LEXIS 82667, at *20 (D. Kan. Sep. 10, 2009) (cleaned up). Post-judgment discovery is designed to allow judgment creditors to inquire into judgment debtors' hidden or concealed assets, and/or learn of information that could lead to the discovery of concealed or fraudulently transferred assets. *See Comm'ns Imp. Exp. S.A. v. Rep. of Congo*, No. 2:16-CV-00404-BSJ, 2016 U.S. Dist. LEXIS 95347, at *6 (D. Utah July 20, 2016); *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, No. CIV-08-0202 (RB/WPL), 2010 U.S. Dist. LEXIS 150037, at *7 (D.N.M. May 10, 2010) (cleaned up). Post-judgment discovery is not limited to the scope of the judgment, and judgment creditors may seek discovery into assets that are ultimately exempt from the judgment. *See Hartford Fire Ins. Co.*, 2009 U.S. Dist. LEXIS 82667, at *22; *White v. General Motors*

*Corp.*, No. 88-2053-S, 1990 U.S. Dist. LEXIS 4049, at *1-*2 (D. Kan. Mar. 13, 1990) (cleaned up).

Post-judgment discovery is accorded the same "broad and liberal treatment" as other forms of discovery. *Mountain Dudes, LLC v. Split Rock, Inc.*, No. 2:08-cv-00940, 2013 U.S. Dist. LEXIS 141856, at *5 (D. Utah, Sep. 29, 2013) (cleaned up). Fed. R. Civ. P. Rule 69(a) allows post-judgment discovery to be sought by any means permitted by the Fed. R. Civ. P or the state in which the court is located. *Hartford Fire Ins. Co.*, 2009 U.S. Dist. LEXIS 82667, at *20-*21 (cleaned up).

a. <u>Universitas Can Seek Discovery into Other Judgment Debtors' Assets from Avon-WY.</u>

Universitas can conduct discovery into Avon-WY regarding the assets of the judgment debtors. A judgment creditor is "entitled to a very thorough examination of the judgment debtor" when seeking assets through which to satisfy a judgment. *Mountain Dudes, LLC*, 2013 U.S. Dist. LEXIS 141856, at *5 (cleaned up). This discovery includes third parties—"'there is no doubt that third parties can be examined in relation to the financial affairs' of a judgment debtor." *Id.* at *5 (citations omitted).

Carpenter created a complex and intricate network through which he fraudulently conveyed Universitas' money through dozens of shell companies and other entities. Universitas is now in the process of untangling this financial web to locate assets against which to enforce its judgement. Given Avon-WY's relationship with Carpenter, Trudeau, Avon-NV, Caroline, and other Carpenter affiliates, Universitas can examine Avon-WY for information concerning the judgment debtors' finances. *See Itochu Int'l, Inc. v. Devon*

*Robotics, LLC*, 303 F.R.D. 229 (E.D. Pa. 2014) (rejecting judgment debtors' motion to quash subpoenas served on non-parties concerning discovery into judgment debtors' bank accounts and financial records because such discovery was "plainly relevant to [judgment creditor's efforts to untangle financial web], and is a proper form of post-judgment discovery.").

    b.  <u>Universitas Can Seek Discovery into Avon-WY's Assets and Financial Affairs.</u>

Universitas is permitted to seek discovery into Avon-WY's assets. Post-judgment discovery into the finances of a nonparty to the judgment requires a demonstration of at least some concealment, fraudulent transfers, or alter ego relationship with the judgment debtor. *Mountain Dudes, LLC*, 2013 U.S. Dist. LEXIS 141856, at *6 (cleaned up). This threshold is satisfied by evidence sufficient to raise legitimate questions about the relationship between the judgment debtor and the nonparty, and the transactions between them. *Id.* at *7.

The evidence in this case raises legitimate questions concerning the relationship between Avon-WY and other persons and entities within the Carpenter criminal network. Carpenter concedes involvement in Avon-WY's acquisition of SDM, and Avon-WY's signatory for this transaction was a known Carpenter co-conspirator with no relationship to Avon-WY at the time of the transaction. All of Avon-WY's financial obligations under the Agreement were fulfilled by Avon-NV. These financial obligations included both the purchase price paid to the Morans, and the monthly servicing fees to ASG, which Avon-NV continued making after Avon-WY was administratively dissolved. All of the money used by Avon-NV in these transactions was obtained through fraud and money laundering,

and rightfully belongs to Universitas. The result of these transactions was that SDM's policies were purchased with criminally derived moneys, and Avon-WY owned the policies without coming into contact with any laundered or fraudulently conveyed money—a favorable outcome given Carpenter's opinion that Wyoming had the best laws for life insurance settlement policies.

Avon-WY's registered agent resigned the same day that Trudeau received notice of Avon-WY's breach of the Agreement from the Morans, despite the fact that Trudeau had no formal relationship with Avon-WY at this time. The Morans subsequently initiated litigation, which resulted in a settlement between the Morans and Avon-WY. Eleven days later the Morans received $75,000 from Avon-NV. Avon-NV paid the Morans another $700,000 over the next seven months. Universitas' believes the additional $775,000 paid to the Morans was pursuant to the settlement agreement reached in their litigation, and another instance of Avon-NV fulfilling Avon-WY's financial obligations. The $775,000 conveyed to the Morans was also obtained by Avon-NV through fraud and money laundering, and rightfully belongs to Universitas.

Avon-NV's fulfilment of Avon-WY's financial obligations is indicative of common ownership and/or control. This notion of common control is further supported by the fact that both Avon-NV and Avon-WY were founded at Carpenter's direction, managed by Carpenter controlled entities, and shared an address of 100 Grist Mill Road, Simsbury, CT

06070 at the time of the transactions in question.[6] Additionally, both of Avon-NV's known bank accounts were controlled by Carpenter throughout the period in question.

Further raising questions about Avon-WY's relationship with the Carpenter criminal enterprise is Avon-WY's conveyance of life insurance policies to third party investors. On or about November of 2016, life insurance policies were conveyed from the Charter Oak Trust to Yates, who transferred these policies to Tranen Capital, who transferred them to Avon-WY, who ultimately sold them to third party investors. Trudeau was the signatory for both Yates and Avon-WY in these transactions, and is formally affiliated with Tranen Capital. Congratulatory emails from party that purchased the life insurance policies were forwarded from Trudeau to Carpenter on November 16, 2010—Trudeau filed for Avon-WY's reinstatement on November 15, 2010.

The evidence in this case raises an inference of concealment, fraudulent transfers, and alter ego relationships between Avon-WY and judgment debtors. Given the doubts regarding the bona fides of Avon-WY's transactions, Universitas is permitted to seek discovery into Avon-WY's assets. *See Mountain Dudes, LLC*, 2013 U.S. Dist. LEXIS 141856, at *7.

II.    Universitas Could Enforce its Judgment Against Assets Owned by Avon-WY.

Universitas can enforce its judgment against Avon-WY whether or not this Court found Avon-WY to be a judgment debtor. Universitas could recover from Avon-WY by

---

[6] This is the same address as the Grist Mill Trust and Grist Mill Holdings, the entities through which Universitas' money was laundered. *See* Dkt. 92, page 5 n 4.

setting aside the fraudulent conveyances of Universitas' money and allowing Universitas to recover the SDM policies, or the proceeds thereof, from Avon-WY, or by finding Avon-WY liable for the judgment as an alter ego of other judgment debtors. Univeristas is not seeking to enforce its judgment against Avon-WY's fraudulently obtained assets or seeking to find Avon-WY an alter ego at this time, but may do so in the future.

   a.  <u>Universitas Can Recover Avon-WY's Fraudulently Conveyed Assets by Having the Court Set These Transactions Aside.</u>

Universitas can have Avon-WY's fraudulent transactions set aside so that it may recover from Avon-WY. Judgment creditors are permitted to enforce their judgment against a judgment debtor's assets that have been fraudulently conveyed. *United States v. Greene*, No. 04-CR-209 (TCK), 2012 U.S. Dist. LEXIS 74889, at *5 (N.D. Okla. May 31, 2012) (cleaned up). This is true even when the assets are in the hands of a third party, and even if the third party has no liability for the judgment. *See Nebraska v. Stabl, Inc.*, No. 8:16CV351, 2016 U.S. Dist. LEXIS 164381, at *6-*8 (D. Neb. Nov. 29, 2016) (cleaned up); *Greene*, 2012 U.S. Dist. LEXIS 74889, at *5-*6 (cleaned up).

Avon-WY appears to be a benefactor of the Carpenter criminal enterprise's money laundering and fraudulent conveyances—the transfers of Universitas' money from the Charter Oak Trust were the basis of Carpenter's conviction for money laundering, and each separate transaction involved with transfer of money from the Charter Oak Trust to Avon-NV has been found fraudulent. *See Carpenter*, 190 F. Supp. 3d at 292; *Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077, at *10-*11. These same fraudulent conveyances were intended to prevent Universitas from discovering the judgment debtors' assets and

ultimately enforcing their judgment, and as such the Court can set aside these fraudulent conveyances to allow Universitas to enforce its judgment.

    b. <u>Universitas Can Recover from Avon-WY by Piercing the Corporate Veil Given its Alter Ego Status with Other Judgment Debtors.</u>

Universitas can hold Avon-WY liable for the judgment given its alter ego status with the other judgment debtors. Courts are permitted to pierce the corporate veil and hold others liable for the actions of a corporation when that corporation is not managed as a distinct entity. *See GreenHunter Energy, Inc. v. W. Ecosystems Tech., Inc.*, 2014 WY 144, ¶12-¶14, 337 P.3d 454, 459 (Wyo. 2014). The evidence in this case suggests that Avon-WY was operated as part of Carpenter's criminal network, rather than as a distinct corporate entity. Thus, Universitas can hold Avon-WY liable for the other judgment debtors and enforce its judgment against Avon-WY.

Corporations and limited liability corporations ("LLCs") are typically separate and distinct entities from their owners and affiliates, but owners and affiliates can be held liable for the company by piercing the corporate veil. *See GreenHunter Energy, Inc.*, 2014 WY at ¶12-¶14, 337 P.3d at 459; *Ridgerunner, LLC v. Meisinger*, 2013 WY 31, ¶14, 297 P.3d 110, 115 (Wyo. 2013) (cleaned up). Generally speaking, companies require common ownership to be considered alter egos, but extensive control by a non-owner can warrant piercing the LLC veil. *Mantle v. North Star Energy & Constr. LLC*, 2019 WY 29, ¶134, 2019 Wyo. LEXIS 29, at *101-*102 (Wyo. 2019) (cleaned up). Wyoming law would likely be applied for an alter ego determination. *Bd. Of County Comm'rs v. Freeport-Mcmoran Copper & Gold, Inc.*, No. CIV-12-601 (C), 2013 U.S. Dist. LEXIS 185755, at *4-*6 (W.D.

Okla Sep. 5, 2013); *Cyprus Amax Minerals Co. v. TCI Pac Communs., Inc.*, No. 11-CV-252 (GKF) (PJC), 2012 U.S. Dist. LEXIS 129577, at *4-*5 (N.D. Okla. Sept. 12, 2012). Under Wyoming law, fraud is sufficient to pierce the veil of an LLC—"it is in the public interest to disregard the legal fiction of a separate entity, whether that be a corporation or LLC, when those benefiting from that fiction commit fraudulent conduct." *GreenHunter Energy, Inc.*, 2014 WY at ¶53, 337 P. 3d at 469 (citations omitted); *see also* Wyo. Stat. § 17-29-304 (2016).

Fraud can be established by constructive fraud. *Mantle*, 2019 WY at ¶88, 2019 Wyo. LEXIS 29, at *63-*64 (cleaned up). Constructive fraud involves all "acts, omissions, and concealments involving breaches of a legal or equitable duty resulting in damage to another," and exists where such conduct, although not actually fraudulent, ought to be treated as such when it has the same consequences. *Mantle*, 2019 WY at ¶130, 2019 Wyo. LEXIS 29, at *98 (citations omitted); *GreenHunter Energy, Inc.*, 2014 WY at ¶30, 337 P.3d at 463. Wyoming has "badges of fraud," through which fraudulent intent can be inferred. *See* In re *Estate of Reed*, 566 P.2d 587, 590 (Wyo. 1977) ("A transfer of property, without consideration, in the face of a threat or pendency of litigation, is a badge of fraud.") (citations omitted). Some badges of fraud have been codified, including concealing the transfer and lack of consideration. Wyo. Stat. § 34-14-205 (2006). A single badge of fraud can render a transaction fraudulent. *Mantle*, 2019 WY at ¶96, 2019 Wyo. LEXIS 29, at *71-*72 (cleaned up).

As has been previously discussed, the evidence in this case suggests common control of Avon-WY, Avon-NV, and the rest of the Carpenter criminal enterprise. Avon-

WY and Avon-NV were both incorporated at Carpenter's direction, managed by Carpenter controlled entities, and based from the same address throughout the time period at issue. Avon-WY conducted business through Carpenter's co-conspirator with no formal relationship to the company at the time, and all of Avon-WY's financial obligations were fulfilled by Avon-NV, using laundered money. Avon-NV's fulfillment of Avon-WY's financial obligations persisted after Avon-WY's dissolution, and Avon-NV received nothing in return for the money provided on Avon-WY's behalf. *See* Wyo. Stat. § 34-14-205 (codifying transfers with lack of consideration as badge of fraud).

Avon-WY was also used in furtherance of the objective of the Carpenter criminal network—Avon-WY sold stranger-originated life insurance policies to third party investors, thus achieving the purpose of Carpenter's criminal enterprise. Emails acknowledging this sale were forwarded to Carpenter by Trudeau the day after Trudeau reinstated Avon-WY. These policies originated from the Charter Oak Trust, and Trudeau was a signatory for three separate transactions involved in the transfer of these policies from the Charter Oak Trust to Avon-WY.

The evidence thus suggests that Avon-WY was operated in conjunction with other components of the Carpenter criminal network to help achieve the purpose of the criminal enterprise. Such a finding warrants piercing the corporate veil of Avon-WY. *See Mantle*, 2019 WY at ¶126, 2019 Wyo. LEXIS 29, at *93-*94. Should Universitas seek to enforce its money judgment against Avon-WY, and the Court were to find that Avon-WY is not a judgment debtor, Universitas could likely enforce its judgment against Avon-WY by imposing alter ego liability upon Avon-WY.

## <u>CONCLUSION</u>

Because Rule 69 allows judgment creditors to seek post-judgment discovery into any relevant matter, from any person, in order identify and locate the judgment debtor's assets, Universitas should be allowed to conducted limited depositions to locate and identify assets of its judgment debtor, and to pursue further actions regarding collection. Universitas' requests this Court grant its request for post-judgment discovery for the foregoing reasons.

Respectfully submitted,

/s/ Joshua C. Greenhaw
Joshua C. Greenhaw, OBA No. 19111
jcg@meehoge.com
MEE MEE HOGE & EPPERSON PLLP
50 Penn Place
1900 NW Expressway, Suite 1400
Oklahoma City, OK 73118
Telephone: (405) 848-9100
Facsimile: (405) 848-9101
ATTORNEYS FOR UNIVERSITAS
EDUCATION, LLC

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of April 2019, I electronically transmitted the

foregoing document to the Clerk of Court using the ECF System for filing and transmittal

of Notice of Electronic Filing to the following ECF registrants on record:

John D. Stiner
Joseph H. Bocock
Alan Rupe
Gerald Green
Melvin McVay
Clayton Ketter

/s/ Joshua C. Greenhaw

22