IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC, | ) ) ) |
|     Petitioner/Judgment Creditor, | ) ) ) ) |
| v. | ) ) |
| AVON CAPITAL, LLC, | ) ) ) |
|     Respondent/Judgment Debtor, | ) ) ) ) |
| ASSET SERVICING GROUP, LLC, | ) ) ) |
|     Respondent/Garnishee, | ) ) ) |
| SDM HOLDINGS, LLC, | ) ) |
|     Respondent/Garnishee, | ) ) ) |
| and | ) ) |
| AVON CAPITAL, LLC, a Wyoming Limited Liability Company, | ) ) ) ) ) |
|     Intervenor. | ) |

Case No. 14-FJ-05-HE

## ORDER

I.    Introduction.

Petitioner Universitas Education, LLC (Universitas), initiated this matter in aid of execution of a $6,710,065.92 judgment entered in its favor on

August 12, 2014, by the United States District Court for the Southern District of New York (Judgment) against, as relevant here, Avon Capital, LLC.  *See* Docs. 1, 6.  In an Order dated April 11, 2019, the court ordered the parties to submit briefing regarding Petitioner's stated interest in conducting <u>limited</u> discovery to address the ownership of Intervenor Avon Capital, LLC, a Wyoming Limited Liability Company (Intervenor), and related issues of collectability in this matter.  Doc. 143.

Before the court is Petitioner's Motion for Post-Judgment Discovery and Brief in Support, filed in response to the court's order.  Docs. 144, 147. Petitioner asserts it is necessary for it to conduct "limited depositions to locate and identify assets of its judgment debtor, and to pursue further action regarding collection."  Doc. 147, at 21.  Petitioner identifies Intervenor as the target of its further post-judgment discovery in aid of its effort to discover the location of Avon Capital, LLC's assets.  *Id.* at 16.

Garnishee SDM Holdings, LLC (SDM) has filed an objection to Petitioner's motion asserting Petitioner should be prevented from bringing "ancillary" claims against the Intervenor because neither Intervenor nor SDM are the judgment debtor.  Doc. 148, at 2-3, 5.  SDM also complains Petitioner has refused to name the judgment debtor and/or disclose or prove its proposed discovery will be tailored to prevent a fishing expedition into SDM's assets.  *Id.* at 5.  Finally, SDM states it has already complied with Petitioner's discovery

requests and the court should not allow Petitioner to engage in "duplicative" discovery. Id. at 4, 6.

Intervenor has also filed an objection arguing Petitioner cannot seek discovery from Intervenor, and this court may not order Intervenor to respond to Petitioner's discovery, without prior due process of law. Doc. 149, at 5. In support of this argument, Intervenor simply argues it was not a party to the Judgment and is not the judgment debtor, so, it is immune from post-judgment discovery concerning Avon Capital, LLC's assets. *Id.* at 5, 11.

Having reviewed the parties' submissions, the court concludes Petitioner's motion to conduct post-judgment discovery should be granted, but with limitations.

## II. Background.

### A. The Southern District of New York's findings.

The facts as found by the District Court for the Southern District of New York are that Daniel E. Carpenter and his brother-in-law, Wayne H. Bursey, conspired to siphon off approximately $30 million of insurance proceeds due to Petitioner through transfers from the Charter Oak Trust to several shell entities owned and controlled, directly and indirectly, by Mr. Carpenter. *Universitas Educ., LLC v. Nova Grp., Inc.*, 2014 WL 3883371, at *2-3 (S.D.N.Y. Aug. 7, 2014). The court found that, on October 27, 2009, Mr. Carpenter caused $19.8 million to be transferred from Charter Oak Trust to Grist Mill, a

company wholly owned by its members Grist Mill Holdings and Caroline Financial Group which are both wholly owned by Mr. Carpenter. *Id.* at *3. On November 11, 2009, Mr. Carpenter then caused a transfer of $6,710,065.92 from Grist Mill to Avon Capital, LLC, an entity formed in Connecticut and controlled by its managing member, Grist Mill. *Id.* at *3, *7.

### B. Petitioner's submissions.

Petitioner submits Intervenor is also a shell company of Mr. Carpenter. Doc. 147, at 9. It explains Intervenor was incorporated in Wyoming at Carpenter's behest in 2007 with a listed business and mailing address of 100 Grist Mill Lane, Simsbury, CT, 06070, and with Caroline Financial Group as its manager. *Id.*; *see Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 6123104, at *2 (S.D.N.Y. Nov. 20, 2013) (noting "Daniel E. Carpenter has founded and controlled hundreds of companies out of his offices at 100 Grist Mill Road in Simsbury, Connecticut."). The company was dissolved in April of 2009 but was reinstated in November of 2010 with Caroline Financial Group still serving as its manager and Donald Trudeau[2] as its registered agent. *Id.*

---

[2] Petitioner asserts Mr. Trudeau "is another affiliate of Carpenter's criminal enterprise." Doc. 147, at 14 (citing *United States v. Carpenter*, 190 F.Supp.3d 260, 299 (D. Conn. 2016) ("The evidence establishes beyond a reasonable doubt that [Carpenter] conspired with Ed Waesche, Charles Westcott and Don Trudeau, among others.")).

Avon Capital, LLC, a Nevada Limited Liability Company (Avon-NV), was another company formed by Mr. Carpenter and managed by Grist Mill Capital, LLC. *Id.* at 10. Petitioner alleges the approximately $6 million transfer made to Avon Capital, LLC on November 11, 2009, was held in a bank account owned by Avon-NV and controlled by Mr. Carpenter. *Id.* at 10-11. Plaintiff maintains the account was closed on June 9, 2010 and the remaining funds were transferred to another bank account controlled by Mr. Carpenter. *Id.* at 11.

Petitioner submits that on December 30, 2009, Intervenor, with the involvement of Mr. Carpenter and Mr. Trudeau, entered into an asset purchase agreement of SDM's assets. *Id.* at 12-13. Pursuant to this purchase agreement, Avon-NV wired $1,292,210.66 from its bank account on December 31, 2009, to the owners of SDM. *Id.* Avon-NV then completed two more wire transfers on January 4 and January 7, 2010, to SDM's owners in partial satisfaction of the Intervenor's purchase agreement. *Id.* After a dispute and eventual settlement between the SDM owners and Intervenor, Avon-NV paid approximately $875,000 to the owners before finalizing the transaction on behalf of Intervenor. *Id.* at 13. Before Intervenor was dissolved, Avon-NV also paid Intervenor's monthly bills from Asset Servicing Group for its servicing of SDM's life insurance policies acquired by Intervenor. *Id.* at 14. Petitioner

asserts SDM was later sold or transferred to Grist Mill Capital, LLC. *Id.* at 13.

### III. Standard of Review.

"Control of discovery is entrusted to the sound discretion" of the court. *Punt v. Kelly Servs.*, 862 F.3d 1040, 1047 (10th Cir. 2017). The court may limit the scope of discovery for good cause shown. S*ee* Fed. R. Civ. P. 26(b)(2)(C). However, it is ultimately counsel's responsibility to propound "proper discovery requests, and expecting counsel to fulfill this responsibility is neither capricious nor unfair." *Punt*, 862 F.3d at 1047.

Under the Federal Rules of Civil Procedure, "parties to civil litigation are given broad discovery privileges." *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008). Post-judgment discovery, which is at issue here, is subject to that same broad privilege. *See Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998) ("The law allows judgment creditors to conduct full post-judgment discovery to aid in executing judgment."); *see also United States v. Conces*, 507 F.3d 1028, 1040 (6th Cir. 2007) ("The Federal Rules expressly authorize discovery '[i]n aid of [a] judgment' in the manner otherwise 'provided in these rules,' . . ., and the courts have confirmed that '[t]he scope of postjudgment discovery is very broad . . . .'" (citing Fed. R. Civ. P. 69(a) and *F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir.1995))).

Rule 69 governs Petitioner's request to conduct post-judgment discovery in this matter:

> In aid of the judgment or execution, the judgment creditor . . . may obtain discovery *from any person*-including the judgment debtor- as provided in these rules or by the procedure of the state where the court is located.

Fed. R. Civ. P. 69(a)(2) (emphasis added).[3] "The purpose of the postjudgment proceedings is to discover assets that might be available to satisfy the

---

[3] Oklahoma similarly allows broad post-judgment discovery of "any person" concerning the judgment debtor's assets as referenced in Title 12, Section 842 of the Oklahoma statutes:

> B. At any time after a final judgment, order, or decree is filed, an attorney for a judgment creditor may:
>
> 1. Subpoena the judgment debtor, pursuant to Section 2004.1 of this title, to appear at any place in the county in which the judgment, order, or decree was rendered, or the judgment debtor's county of residence, to answer concerning the judgment debtor's property, income, or liabilities, or to produce documents concerning the debtor's property, income, or liabilities. The judgment debtor shall not be entitled to an attendance fee or mileage;
>
> 2. Subpoena any person, pursuant to Section 2004.1 of this title, to appear at any place in the county where the person is located, or where service may otherwise be had on the person, to answer concerning the judgment debtor's property, income, or liabilities, or to produce documents concerning the judgment debtor's property, income, or liabilities; or
>
> 3. Serve interrogatories, requests for admissions, or request for production of documents, pursuant to Section 3224 et. seq. of this

judgment, and, following discovery, to execute on those assets." *JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co.*, 707 F.3d 853, 868 (7th Cir. 2013). Thus, "[t]he rules governing discovery in postjudgment execution proceedings are quite permissive." *Republic of Arg. v. NML Capital, Ltd.*, 573 U.S. 134, 138 (2014).

Despite Intervenor's assertions otherwise, Doc. 149, at 5, Rule 69 on its face, "expressly authorizes discovery from 'any person,' not merely the judgment debtor." *British Int'l Ins. Co., Ltd. v. Seguros La Republica, S.A.*, 200 F.R.D. 586, 589 (W.D. Tex. 2000). Not only may a judgment creditor make a "full" inquiry into the judgment debtor's assets but it also may inquire into any hidden or concealed assets which may have been transferred to or are being concealed by a third party on behalf of the judgment debtor. *See Credit Lyonnais*, 160 F.3d at 431 ("[T]he presumption should be in favor of full discovery of any matters arguably related to the [creditor's] efforts to trace [the debtor's] assets and otherwise to enforce its judgment," particularly where the relationship between the debtor and a third party "is sufficient to raise a reasonable doubt about the bona fides of any transfer of assets between them"

---

      title, upon the judgment debtor, concerning the judgment debtor's
      property, income, or liabilities.

Okla. Stat. tit. 12, § 842(B)(1)–(3).

(internal quotation and alteration omitted)); *see also ITOCHU Int'l Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229, 232 (E.D. Pa. 2014) ("This rule allows the judgment creditor [] freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." (internal quotation omitted)). "As with general civil discovery, this is not unlimited, and must be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment of the debtor or third persons." *ITOCHU*, 303 F.R.D. at 232 (internal quotation omitted).  Clearly, Rule 69 permits post-judgment discovery aimed at non-parties to the judgment. *Id.*; *see also A&F Bahamas, LLC v. World Venture Grp., Inc.*, 2018 WL 5961297, at *3 (C.D. Cal. Oct. 19, 2018) (finding a "judgment creditor may obtain discovery from both parties and non-parties alike" (internal quotation omitted)).

IV. **Analysis.**

In this case, Petitioner has presented evidence of, at the very least, a close relationship between Intervenor and the judgment debtor.  And Intervenor does not dispute any of Petitioner's allegations.  *See* Doc. 149. Therefore, under the broad rules of discovery, Petitioner is entitled to inquire into the bona fides of any transfer of assets between the judgment debtor and Intervenor. *Credit Lyonnais*, 160 F.3d at 431.  This includes the right to depose a knowledgeable representative of Intervenor concerning the complete extent of the relationship between the two entities. *See Hartford Fire Ins. Co. v. P&H*

*Cattle Co.*, 2009 WL 2951120, at *7 (D. Kan. Sept. 10, 2009) ("Discovery is also allowed to find out about assets that have been fraudulently transferred or are otherwise beyond the reach of execution, as well as information which could reasonably lead to the discovery of concealed or fraudulently transferred assets." (internal quotations omitted)).

Although SDM has previously answered Petitioner's discovery requests, the court concludes Petitioner's request to conduct further discovery concerning Intervenor's connection to the judgment debtor through depositions is not unreasonable given the tangled relationship of the entities involved in this matter. [4] Unraveling that tangled web to reveal the whereabouts of the judgment debtor's assets is precisely the purpose of permissive post-judgment discovery. *NML Capital*, 573 U.S. at 138; *JPMorgan*, 707 F.3d at 868.

Finally, contrary to Intervenor's assertion, the proposed discovery aimed at discerning the Intervenor's full relationship with the judgment debtor will not compromise Intervenor's due process rights. Doc. 149, at 6-8. While it may ultimately be the case that some or all of Intervenor's assets "are not subject

---

[4] *See, e.g., Universitas*, 2014 WL 3883371, at *2-3 (noting its previous finding that Daniel Carpenter "controlled" "hundreds" of entities, including Avon Captial, LLC, and had used the "shell" entities to hide assets from the judgment creditor); *Universitas*, 2013 WL 6123104, at *2 ("Daniel E. Carpenter has founded and controlled hundreds of companies out of his offices at 100 Grist Mill Road in Simsbury, Connecticut.").

to *execution*, that does not mean that information about those assets is protected from *discovery*." *ITOCHU*, 303 F.R.D. at 233.

## V. Conclusion.

Having determined reasonable discovery should be allowed in this matter, the court cannot ignore either Intervenor's or SDM's complaints regarding the protracted nature of this post-judgment litigation. Therefore, the court allows Petitioner to conduct up to three depositions in this matter and to conclude its discovery within four months of the date of this Order. The parties to discovery are encouraged to cooperate in the discovery process as required by the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

**ENTERED** this 31st day of May, 2019.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE