# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC, ) <br> ) <br>    Petitioner/Judgment Creditor ) <br> ) <br> vs. ) <br> ) <br> AVON CAPITAL, LLC, ) <br> ) <br>    Respondent/Judgment Debtor, ) <br> ) <br> ASSET SERVICING GROUP, LLC, ) <br> ) <br>    Respondent, Garnishee, ) <br> ) <br> SDM HOLDINGS, LLC, ) <br> ) <br>    Respondent/Garnishee, ) <br> ) <br> and ) <br> ) <br> AVON CAPITAL, LLC, a Wyoming Limited ) <br> Liability Company, ) <br> ) <br>    Intervenor. ) | Case No. 14-FJ-05-HE |

## **OPPOSITION TO PHOENIX CHARITABLE TRUST'S MOTION TO VACATE**

Universitas Education, LLC ("Universitas") hereby files this brief in opposition to Interested Party Phoenix Charitable Trust's Motion to Vacate ("Phoenix") [Doc. No. 652]. In support thereof, Universitas states as follows:

## INTRODUCTION

Phoenix, which is appearing before this Court in a limited capacity for the sole purpose of lodging objections to issues concerning the present receivership, now seeks to vacate this entire proceeding. Phoenix's Motion to Vacate is fatally flawed on numerous levels, including that it fundamentally misunderstands the application of issue and claim preclusion and is beyond untimely. The Motion to Vacate should be denied.

## STATEMENT OF FACTS

### I. The Instant Proceeding

Universitas respectfully presumes this Court's and the Parties' familiarity with the instant proceedings and thus only provides a recitation of the facts necessary to dispose of the instant motion.

Universitas acquired a judgment against, *inter alia*, Avon Capital, LLC on August 12, 2014 for its role in Daniel Carpenter's theft of $30 million in insurance policy benefits rightfully belonging to Universitas. Universitas then promptly registered its judgment in this Court on November 11, 2014 [Doc. No. 1] and initiated this case to garnish an insurance portfolio nominally held by SDM Holdings, LLC, an Oklahoma limited liability company ("SDM"), which Avon Capital, LLC purchased with the stolen funds. [Doc. 10]. SDM was not an entity formed by Daniel Carpenter and it was registered in Oklahoma.

In 2016, Avon Capital, LLC, a Wyoming limited liability company ("Avon-Wy") intervened in this case as the owner of SDM, despite the fact that it had been administratively dissolved. [Doc. 56.] This Court granted Avon-Wy's motion to intervene, which was supported by a sworn statement of Avon-Wy's principal, Donald Trudeau ("Trudeau"). [Doc. 57-3, April 15, 2016] ("Avon Capital-Wy owns 100% of the membership interests in SDM Holdings, LLC."). Avon-Wy principally argued that it was a distinct entity than the Avon Capital, LLC against which Universitas had obtained a judgment and that Universitas could not execute its judgment against its property—SDM.[1]

Following post-judgment discovery, the Parties submitted summary judgment briefing. Universitas sought to hold Avon-Wy as an alter ego of the other Avon Capital entities in order to complete garnishment of the insurance portfolio held by SDM. SDM was represented by counsel and submitted its own motions for summary judgment, as well as vigorously opposed the motion for summary judgment filed by Universitas. [Doc. Nos. 192, 197.] Neither SDM nor Avon-Wy argued on summary judgment that the underlying proceedings in the Southern District of New York that gave rise to the judgment in this case precluded Universitas from bringing this garnishment proceeding. [*See* Doc. Nos. 192, 195.] After summary judgment briefing this Court found that Avon-Wy was an alter ego of the other Carpenter-controlled Avon Capital entities and pierced its corporate veil. [Doc. No. 218, *adopted by* Doc. Nos. 228 (vacated), 521.] Appeals and a receivership proceeding

---

[1] As this Court is aware there are three Avon-Capital entities controlled by Daniel Carpenter—one based in Connecticut, one based in Nevada, and one based in Wyoming. All three of these entities appear to have had their primary place of business in Connecticut.

2

followed, in which Phoenix was given permission to participate in these proceedings on a limited basis as an interested party that could object to issues related to the receivership on behalf of SDM's former management. [Doc. Nos. 367 at 4 ("The court does, however, conclude that . . . Phoenix . . . has enough of a connection to SDM, however tenuous and convoluted, to have a basis for objecting to *matters occurring in this receivership which impact SDM*.") (emphasis added); 614.] Ultimately, the Tenth Circuit vacated this Court's original Order [Doc. No. 228] finding Avon-Wy to be an alter ego of the other Avon Capital entities. [Doc. No. 510.] The Tenth Circuit held that Universitas's failure to refile its original judgment rendered the case moot at the time and remanded to this Court for further proceedings, notably without a mandate to dismiss the proceeding.[2]

After the Tenth Circuit remanded this case for further proceedings, this Court found that it reacquired jurisdiction when Universitas refiled its judgment on August 7, 2023. [Doc. No. 511.] This Court has since reappointed a Receiver over Avon-Wy, [Doc. No. 564], who has appointed a manager of SDM. It is against this backdrop that Phoenix moves for vacatur.

## II.     The Connecticut and Second Circuit Proceedings

On May 20, 2020, in response to the sustained recalcitrance by Mr. Carpenter and his entities to pay the judgments against them, Universitas sought to impose substantive alter ego liability on other entities and individuals within the Carpenter organization,

---

[2] Importantly, in its original decision, the Tenth Circuit held that refiling of the judgment would have cured the jurisdictional defect and re-conferred jurisdiction on this Court. This original decision was superseded when it became clear that Universitas had not actually refiled a copy of the underlying judgment from the Southern District of New York.

3

including Benistar Administrative Services, Inc. and TPG Group, Inc., which Universitas alleged function as the center of Mr. Carpenter's operations. Universitas thus filed a complaint in the United States District Court for the District of Connecticut ("Connecticut Court") alleging alter ego and unjust enrichment claims against these Carpenter-controlled entities, as well as certain individuals, including Donald Trudeau and Molly Carpenter (Daniel Carpenter's spouse), which Universitas alleged were all involved with Mr. Carpenter's enterprise or the theft of the funds. *Universitas Educ., LLC v. Benistar Admin. Servs., Inc.*, No. 23-1207, 2024 U.S. App. LEXIS 10046, at *3 (2d Cir. April 25, 2024).

Ultimately, the Connecticut Court found, and the United States Court of Appeals for the Second Circuit upheld, that Universitas's claims were barred by *res judicata*, or claim preclusion. *Id.* at *6-*8. Specifically, the Second Circuit found that there existed no procedural or jurisdictional bar to bringing alter ego claims against the other Carpenter-controlled entities in a turnover proceeding under New York CPLR Section 5225,[3] and that seeking to impose alter ego liability against the other entities in the Carpenter organization would have formed a convenient trial unit. *Id.* at *6-*7. Thus, the Second Circuit found that Universitas's claims were barred by *res judicata* following New York's transactional analysis.

---

[3] Universitas conceded these points as New York and Second Circuit precedent is clear—alter ego claims can be brought in a turnover proceeding under New York law and alter egos are treated as one entity in determining whether a court can exercise personal jurisdiction over them.

**ARGUMENT**

Phoenix's Motion to Vacate fails on numerous levels. First, the Motion to Vacate is fatally untimely. Tenth Circuit precedent is clear—affirmative defensives, such as *res judicata* must be generally brought by the summary judgment stage or else they are forfeited. SDM—and by extension Phoenix, the interested party representing SDM's prior management's interests—had the ability to make *res judicata* arguments for almost a decade, and instead sat on its hands. It is now far too late to allege *res judicata* as a bar to the instant litigation. Second, even if the Motion to Vacate was timely, which it is not, this proceeding is fundamentally different from the proceedings before the Connecticut Court. This is a garnishment proceeding of an Oklahoma company. Universitas only sought a summary judgment alter ego determination as a result of Avon-Wy's intervention and its claims that it was a distinct entity from other Avon Capital companies.

I. **Phoenix Lacks Standing to Bring this Motion**

At the outset, Phoenix lacks standing to bring its Motion to Vacate. Phoenix is merely an interested party to this case, and has not properly moved to intervene as a party. As such, it is more properly treated as a nonparty for the purposes of determining its standing. This Court, in its discretion, has permitted Phoenix to participate in the proceedings based on a tenuous alleged connection to the insurance portfolio held by SDM, and to object to matters concerning the receivership. [Doc. No 367, 614.] The Motion to Vacate goes far beyond the objections and representation to matters involving the receivership for which this Court allowed Phoenix to appear, which necessarily means that Phoenix lacks standing to request that relief. *See, e.g.*, *Marks v. US West Direct*, No. 98-

5

1043, 1998 U.S. App. LEXIS 31150, at *4 (10th Cir. Dec. 11, 1998) (noting that nonparties generally lack standing to appeal absent "most extraordinary circumstances"); *Smith v. TFI Family Servs.*, No. 17-02235, 2019 U.S. Dist. LEXIS 61203, at * 7 (D. Kan. Apr. 10, 2019) (finding lack of standing to object to motion to amend because objectors were non-parties); *Gay v. United Servs. Auto. Ass'n*, No. Civ-19-00755, 2021 U.S. Dist. LEXIS 109841, at *6 n.17 (W.D. Okla. June 11, 2021) (noting that a non-party lacks standing to invoke a district court's removal jurisdiction).[4] In fact, Phoenix does not even consent to this Court's personal jurisdiction over it, making it clear that it does not see itself as a proper party to this case. [Doc. No. 652 at 4 ("Phoenix does not consent to jurisdiction of the Court over Phoenix . . . Phoenix is filing this document solely as an 'interested party.'").] Phoenix cannot have its cake and eat it too, by invoking this Court's jurisdiction for the relief it seeks on one hand, and on the other arguing that this Court lacks the jurisdiction to do so. For these reasons alone, Phoenix lacks standing and its Motion to Vacate should be denied.

## II.  Legal Standard for Res Judicata and Collateral Estoppel

Generally, federal common law governs the preclusive effect of a prior dismissal by a federal court sitting in diversity. However, when a party invokes the preclusive effect of a diversity-based judgment, a Court should examine the substantive preclusion law of the

---

[4] In fact, the Tenth Circuit has noted that in the context of a receivership, a nonparty affected by the receivership may have limited standing to appeal without first intervening in a district court if they participated in the proceedings and had a legitimate interest in the outcome of the appeal. *See United States v. Solco I, LLC*, 962 F.3d 1244, 1251 n.6 (10th Cir. 2020) (internal citations omitted). However, nothing about this line of precedent suggests that a nonparty has all the ability to seek the same kind of relief as a party to the proceeding.

state in which the judgment-rendering court sat. *Semtek Int'l v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09 (2001). Thus, this Court should look to New York law to determine the preclusive effect of the diversity judgment rendered by the Southern District of New York.[5]

*Res judicata* and collateral estoppel are affirmative defenses. *See In re Sprint Nextel Derivative Litig.*, 437 F. Supp. 3d 927, 935 (D. Kan. 2020). Because *res judicata* and collateral estoppel are affirmative defenses, the burden of proof rests with the defendant. *See id.* Generally, an affirmative defense should be pled in an answer, but the Tenth Circuit has held that an affirmative defense may be brought as late as the summary judgment stage. *Ahmad v. Furlong*, 435 F.3d 1196, 1202-03 (10th Cir. 2006). However, in order to do so, a party raising that affirmative defense must demonstrate that the defense is raised in sufficient time that there is no prejudice to the opposing party merely because of the delay. *Elling*, 2022 U.S. App. LEXIS 4665, at *8 n.2 (citing *Ahmad*, 435 F.3d at 1201).[6]

---

[5] While the parties seem to agree on the applicable choice of law for *res judicata* analysis, Universitas notes that the analysis would likely be the same if applying Tenth Circuit or Oklahoma preclusion law. Oklahoma also uses a transactional approach to *res judicata* and bars litigation of any "adjudicated claim [and] also any theories or issues that were actually decided, or could have been decided[]" in an action. *Nat'l Diversified Bus. Servs. v. Corporate Fin. Opportunities, Inc.*, 1997 OK 36, 946 P.2d 662, 667 (1997) (emphasis removed). Similarly, the Tenth Circuit utilizes a transactional approach to *res judicata*, just like New York. *Elling v. Cai*, No. 21-2045, 2022 U.S. App. LEXIS 4665, at *8 (10th Cir. Feb. 22, 2022) (noting that the Tenth Circuit has "adopted the transactional approach in analyzing the single-cause-of-action element of [*res judicata*][]") (internal citations omitted).

[6] Notably, both the Second Circuit and New York similarly permit a party to raise an affirmative defense as late as summary judgment "in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant . . . or undue delay of the proceedings." *Capitol Records, LLC v. ReDigi Inc.*, 2015 U.S. Dist. LEXIS 113790, at *9 (S.D.N.Y. Aug. 27, 2015) (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir.

Under New York law, *res judicata* precludes later claims if successive litigation "based on the same transaction or series of connected transactions if:" (1) there "is a judgment on the merits rendered by a court of competent jurisdiction," and (2) the party "against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was . . . ." *People ex rel. Spitzer v. Applied Card Sys. Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008). New York adheres to a "transactional analysis of res judicata," which bars later claims arising out of the same facts and circumstances as an earlier litigated claim, even where a claimant bases new claims on "different legal theories or seeks dissimilar or additional relief." *Tasaka v. Bayview Loan Servicing, LLC*, No. 17-CV-07235 (LDH)(ST), 2022 U.S. Dist. LEXIS 60895, at *12 (E.D.N.Y. Mar. 31, 2022) (quoting *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994)). Thus, *res judicata* applies if the prior action was "grounded on the same gravamen of the wrong upon which the action is brought." *Smith v. Russell Sage Coll.*, 54 N.Y. 2d 185, 192, 445 N.Y.S. 2d 68, 429 N.E. 2d 746 (1981). New York takes a pragmatic and flexible approach to *res judicata*, "recognizing that the doctrine, if applied too rigidly, could work considerable injustice." *Hansen v. Miller*, 52 F.4th 96, 101 (2d Cir. 2022) (quoting *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111, 148 N.Y.S.3d 178, 170 N.E.3d 733 (2021)).

The doctrine of collateral estoppel is narrower than *res judicata*, and bars a party from relitigating an issue clearly raised in a prior action or proceeding and decided against

---

2003); *Strauss v. BMW Fin. Servs. Veh. Leasing*, 29 Misc. 3d 362, 364 (N.Y. S. Ct. 2010) (noting that a party must show lack of prejudice or surprise to allow a late pleaded affirmative defense).

that party. *Ryan v. New York Tel. Co.*, 467 N.E. 2d 487 (N.Y. 1984). Collateral estoppel only applies "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the [party to be bound] had a full and fair opportunity to litigate the issue in the earlier action." *Folwer v. Indymac Bank, FSB*, 176 A.D.3d 682, 683-84 (N. Y. App. Div. 2019) (internal citations omitted). The party seeking the benefit of collateral estoppel bears the burden of proving that "the identical issue was necessarily decided in the prior action and is decisive of the present action." *Id.* at 684.

### III. The Instant Motion to Vacate Must be Denied as Untimely.

Here, the Motion to Vacate is clearly untimely. While this case is a post-judgment garnishment proceeding under Rule 69 of the Federal Rules of Civil Procedure and thus did not require the filing of a complaint, the same principles regarding timeliness of raising affirmative defenses should apply. SDM has been involved in this case since at least 2015. The judgment was rendered in the Southern District of New York in August of 2014. SDM had ample opportunity to raise the defense of *res judicata* starting in 2015. It did not raise any such defenses. Nor did it raise the defenses of *res judicata* in its summary judgment briefing, which is generally the final opportunity for a party to do so. *See, e.g.*, *Ahmad*, 435 F.3d at 1202-03. Even after summary judgment, SDM had an opportunity to file an answer as a garnishee. Once again, it failed to raise the *res judicata* argument. [Doc. No. 232.] Phoenix represents SDM's former management's interests in this litigation. It offers categorically zero explanation for the decade-long delay in bringing its affirmative defense,

9

which was available to it from the moment that it entered this case. This alone suffices to reject the defenses of *res judicata* and collateral estoppel it now raises.

Moreover, Phoenix has failed to address the substantial prejudice that raising this defense now causes Universitas. Phoenix and SDM before it has raised numerous challenges to Universitas's attempts to garnish the SDM portfolio, that have exploded this simple collection proceeding into a decade-long litigation. Their attempt to now shift to a completely new defense nine years into this case is transparently prejudicial to Universitas, which has expended considerable time, effort, and attorneys' fees in pursuing this case and defending against the arguments that SDM and Phoenix have been consistently making for the last several years. Moreover, raising this defense now further unduly delays this matter, which provides further reason to reject it. Thus, this Court should reject Phoenix's motion to vacate as untimely.

**IV.   Even if Phoenix's Motion to Vacate can be Considered, it Fails on the Merits**

Even if this Court finds that Phoenix's Motion to Vacate is timely enough to consider, which it is not, the Motion to Vacate fails on the merits. This case is significantly different from the case before the Connecticut Court and the Second Circuit. Phoenix argues in a conclusory manner that the circumstances in those cases are identical to those at bar and that that merits dismissal based on the doctrines of *res judicata* and collateral estoppel. Phoenix is mistaken.

   a.   Res Judicata does not Bar the Claims in this Case

Under New York's pragmatic and flexible framework, *res judicata* does not bar the claims here. To demonstrate that *res judicata* bars this claim, Phoenix must demonstrate

10

that a judgment was rendered on the merits by a court of competent jurisdiction and that Universitas could have and should have brought its claims in this case in the prior case. Phoenix argues principally that the Second Circuit held that Universitas could not bring alter ego claims against certain Carpenter-controlled entities and as such, it cannot bring alter ego claims in this matter. Pheonix's argument misses the mark in several respects.

First, unlike the proceeding before the Connecticut Court, this is not a case attempting to impose substantive liability on third parties based on alter ego theory. This case is a garnishment proceeding brought under Federal Rule of Civil Procedure 69 using Oklahoma law. The garnishment is against an Oklahoma entity. Phoenix offers no analysis as to how this action would properly be brought before a court sitting in diversity in New York based on New York state turnover proceedings. Instead, Phoenix hangs its hat on case-specific admissions by Universitas that the Southern District of New York could have considered alter ego claims in a turnover proceeding under New York law. This concession is not applicable here. Universitas initiated a garnishment against SDM, which is fundamentally different from the relief sought in the Connecticut Court. The only alter ego determinations in this case are ancillary determinations that were necessitated by Avon-Wy's intervention and subsequent arguments that Universitas could not garnish assets it owned. Universitas brought a garnishment proceeding against Avon-Wy and SDM, which it could not have brought in a turnover proceeding where substantive liability had not even been determined yet. Absent these inapplicable concessions, Phoenix's argument fails.

Moreover, while Universitas did concede that the Southern District of New York could exercise personal jurisdiction over putative alter egos, SDM has not been alleged to

11

be an alter ego of the entities in the Southern District of New York litigation. The simple fact is that the Southern District of New York could not garnish an Oklahoma entity over which it lacked jurisdiction, and therefore Universitas could not have brought the instant collection action as part of the turnover proceedings before the Southern District of New York. *Res judicata* cannot be properly applied if a court in the first action did not have, or would have declined to exercise, jurisdiction over a case. *O'Connor v. Pierson*, 568 F.3d 64, 71 (2d Cir. 2009) ("res judicata . . . does not apply if 'the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion.'") (internal citations omitted). Phoenix offers no analysis that would indicate that the Southern District of New York could properly have exercised jurisdiction, and thus the Motion to Vacate fails on its face.

      b.  <u>Collateral Estoppel does not Bar the Claims in this Case</u>

Phoenix's claim that this action is barred by collateral estoppel similarly fails. Notably, this Court made its alter ego determinations prior to the action in the Connecticut Court and Second Circuit and Phoenix fails to address why collateral estoppel, which normally applies to later cases, would be retroactively applicable here.

Pheonix claims that the issues in both actions are identical. This is clearly not true. The issue before the Connecticut Court and the Second Circuit was whether Universitas could bring substantive alter ego claims against Carpenter entities against which there was no judgment, and which were involved in varying degrees in the underlying litigation. However, neither the Connecticut Court nor the Second Circuit actually reached the

12

question of whether it was appropriate to impose alter ego liability. Here, the issue is substantially different because Universitas already had a judgment against Avon Capital, LLC and was not seeking to impose new substantive liability on any entity. Instead, it sought to garnish assets held by a third party—SDM. Avon-Wy intervened to argue that the judgment did not apply to Avon-Wy. Thus, Universitas moved for summary judgment on the alter ego issue not to impose substantive new liability, but to confirm that the existing judgment reached Avon-Wy and that garnishment of SDM would be proper. This is fundamentally different from seeking alter ego determinations against entities which were never named in the turnover proceedings. Thus, because the issues are not identical, collateral estoppel is inapplicable and the Motion to Vacate should be denied.

## V. Phoenix's Jurisdictional Arguments Fail.

Phoenix also makes several arguments that this Court lacks jurisdiction. While this Court has already rejected these arguments, Universitas shall briefly address them. First, any suggestion that this Court has failed to follow the law of the case is flatly incorrect. While the Tenth Circuit did vacate this Court's February 10, 2021 Order as moot, it never mandated dismissal of the case. The mandate rule is an "important corollary to the law of the case doctrine" and a district court has discretion to hear further proceedings unless that discretion is "specifically cabined" by the instructions from the appellate court. *Solidfx, LLC v. Jeppesen Sanderson, Inc.*, 823 F. App'x 559, 565 (10th Cir. 2020). The Tenth Circuit did not cabin this Court's authority to continue proceedings, and thus this Court has not failed to follow the law of the case.

13

Moreover, Phoenix incorrectly argues that Universitas failed to refile its judgment "against Avon-CT." Setting aside Phoenix's incorrect characterization of the judgment, Universitas refiled its judgment in this proceeding on August 7, 2023. This is a proceeding pursuant to Rule 69 of the Federal Rules of Civil Procedure, which is intended to be "swift, cheap, and informal" and not intended to place a judge into a "procedural straitjacket." *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993). Substantial compliance with state procedures is sufficient in this context, and refiling in this case suffices to renew the judgment and re-confer jurisdiction. *See McCarthy v. Johnson*, No. 98-4003, 1999 U.S App. LEXIS 1519, at *5 (10th Cir. Feb. 3, 1999) (finding that in the face of procedural ambiguity, renewal of a judgment was proper in the same proceeding under Utah law).

Finally, to the extent that Phoenix suggests that Universitas's temporary lack of standing is incurable, that argument also fails. Courts, including the Supreme Court, have permitted parties to cure standing deficiencies and proceed in a case. *Mullaney v. Anderson*, 342 U.S. 415, 416-17 (1952) (joining parties on appeal when it appeared that the original parties lacked standing and noting that to "dismiss the present petition and require the new plaintiffs to start over in the District Court would entail needless waste and runs counter to effective judicial administration . . . ."); *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) (noting in the patent context a judgment could be entered when a plaintiff had constitutional standing at the commencement of a case, lost it, and then reacquired it before judgment). The circumstances in *Schreiber* and *Mullaney* are analogous to those at bar. Thus, Phoenix's jurisdictional arguments also fail.

## **CONCLUSION**

For all the foregoing reasons, this Court should deny Phoenix's Motion to Vacate.

Dated: June 12, 2024

                              Respectfully submitted,

                              /S/ Joseph L. Manson III
                              JOSEPH L. MANSON, III
                              (*Admitted Pro Hac Vice*)
                              jmanson@jmansonlaw.com
                              LAW OFFICES OF JOSEPH L. MANSON III
                              600 Cameron St,
                              Alexandria, VA 22314
                              Telephone: (703) 340-1693


                              ATTORNEYS FOR PETITIONER
                              UNIVERSITAS EDUCATION, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June, 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants on record:

John D. Stiner

Joseph H. Bocock

Alan Rupe

Melvin McVay

Clayton Ketter

Joseph L Manson, III

Jeffrey Sandberg

Heidi Long

/s/ Joseph L. Manson III